FLORENCE K. APPLEBAUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF JOSEPH R. APPLEBAUM, DECEASED, THE FIDELITY BANK, CO-EXECUTOR, JOSEPH K. KOPLIN, CO-EXECUTOR, JOHN A. EICHMAN, CO-EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Applebaum v. Commissioner
Docket Nos. 502-80, 743-80.
United States Tax Court
T.C. Memo 1982-278; 1982 Tax Ct. Memo LEXIS 468; 43 T.C.M. (CCH) 1419; T.C.M. (RIA) 82278; May 19, 1982. Jules I. Whitman, for petitioner Florence K. Applebaum. John A. Eichman, III, for petitioner Estate of Joseph R. Applebaum. Robert W. Lynch, for the respondent. NIMS
MEMORANDUM OPINION NIMS, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket No.
Petitioner
Taxable Year Ended
Deficiency
502-80
Florence K. Applebaum
December 31, 1975
$ 82,854.75
743-80
Estate of Joseph R.
December 31, 1975
[1] 82,854.75
Applebaum, Deceased
The Fidelity Bank,
Co-Executor
Joseph K. Koplin,
Co-Executor
John A. Eichman,
Co-Executor
*471 Concessions having been made by the petitioners, the remaining issue for decision is whether the distributive share of 1975 partnership losses for Joseph R. Applebaum, deceased, is properly reportable by his estate on its fiduciary income tax return or whether an allocable portion of such loss can be reported on the final joint income tax return of Florence K. and Joseph R. Applebaum. These cases were submitted fully stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. The pertinent facts are as follows: Petitioner Florence K. Applebaum is the surviving spouse of Joseph R. Applebaum, deceased. Petitioners The Fidelity Bank, John A. Eichman and Joseph K. Koplin are co-executors of the Estate of Joseph R. Applebaum, deceased. At the time the petitions were filed, Florence K. Applebaum resided at Philadelphia, Pennsylvania, John A. Eichman resided at Bala Cynwyd, Pennsylvania, Joseph K. Koplin resided at Philadelphia, Pennsylvania, and The Fidelity Bank had its principal place of business at Philadelphia, Pennsylvania. Until his death on August 22, 1975, Joseph R. Applebaum owned no less than a 50 percent *472 and no more than a 59.52 percent interest as a general partner in a limited partnership known as Phoenix Plaza Associates. As of December 31, 1975, the Estate of Joseph R. Applebaum held a 59.52 percent interest as its distributive share of the net profits and net losses of Phoenix Plaza Associates. Phoenix Plaza Associates was a limited partnership formed under the Pennsylvania Limited Partnership Act in 1968 for the purposes of 1) acquiring property in Phoenixville, Chester County, Pennsylvania, 2) constructing thereon a shopping center and 3) leasing and managing that shopping center. The partnership, during the period 1968 through 1978, reported its income on a calendar year basis. As of the death of Joseph R. Applebaum, the partnership agreement of Phoenix Plaza Associates provided in part: X. Death or Insanity of a General Partner.
The death or insanity of a General Partner shall cause the dissolution of this partnership within the intendment of the Limited Partnership Act and, in such case (a) The remaining General Partners shall continue the business of the partnership; (b) The interest of the deceased or insane General Partner in the partnership capital *473 and its profits and losses shall be converted into that of a Limited Partner and be subject to the provisions of the agreement relating to a Limited Partner's interest and (c) A new partnership shall thereupon be deemed to have been established among the parties hereto under the terms and provisions of this agreement without further act or writing. A Certificate of Limited Partnership of Phoenix Plaza Associates was filed in the office for recording of deeds, Montgomery County, Pennsylvania, on May 2, 1969. The certificate listed Joseph R. Applebaum as one of several general partners of the limited partnership. It also contained the following language regarding the death of a general partner: XIII. Upon death, retirement or insanity of a General Partner, the remaining General Partner or Partners shall continue the business of the Partnership. The estate of Joseph R. Applebaum continued to hold, at least through December 31, 1977, an interest in Phoenix Plaza Associates. Subsequent to the death of Joseph R. Applebaum, litigation arose between the remaining general partners and the decedent's estate regarding the nature of the partnership interest held by the estate and *474 the estate's liability for certain partnership obligations entered into prior to the death of Joseph R. Applebaum. On October 2, 1975, the executors of the estate of Joseph R. Applebaum sent a letter to Kurt Rostan, a general partner of Phoenix Plaza Associates, requesting that Mr. Rostan file an amendment to the Certificate of Limited Partnership reflecting the change in status of the interest of the decedent from a general partnership interest to a limited partnership interest pursuant to paragraph X of the partnership agreement. Mr. Rostan refused to file such an amendment, contending that the decedent's estate continued to be liable as a general partner for the completion and carrying out of all executory contracts that existed at the time of Joseph R. Applebaum's death as well as all outstanding liabilities and obligations and any other liabilities or obligations which necessarily might be incurred for the purposes of completing and carrying out obligations that existed at the time of decedent's death. On October 21, 1975, the estate of Joseph R. Applebaum filed in the Court of Common Pleas of Montgomery County, Pennsylvania, a "Petition for Rule to Show Cause Why an Amendment *475 of the Limited Partnership Certificate of Phoenix Plaza Associates Should Not Be Directed to Be Filed." Contemporaneous with the above law suit, on February 4, 1976, Kurt Rostan, as general partner of Phoenix Plaza Associates, filed a Complaint for Declaratory Judgment against the executors of the estate of Joseph R. Applebaum in the United States District Court for the Eastern District of Pennsylvania. The complaint prayed that the court declare the rights and legal relations of the plaintiff and the defendants as regards their partnership interests in Phoenix Plaza Associates, particularly as regards the liability of the estate for its proportionate share of actual or contingent liabilities incurred on behalf of the partnership prior to Joseph R. Applebaum's death. Both of these lawsuits were eventually settled on January 4, 1978. In the settlement agreement, the parties continued to maintain their initial positions as to whether the estate remained a general partner or became a limited partner upon the death of Joseph R. Applebaum. The estate, inter alia, agreed that it was liable for 50 percent of certain outstanding partnership liabilities, in the total amount of $ 315,807.59, *476 and certain contingent partnership liabilities which might in the future be asserted arising out of third parties' dealings with the partnership prior to the date of the settlement agreement. Finally, the settlement agreement provided for the prompt dissolution and termination of the partnership and cancellation of the Certificate of Limited Partnership. In approving the settlement agreement, the judge in the declaratory judgment proceeding stated, referring to the question of the effect of paragraph X of the partnership agreement on the estate's obligations as a partner: "If this issue had been tried, it would have been necessary for this Court to make a determination upon evidence which is by no means conclusive in favor of either party, and thus the question is, in the Court's opinion, extremely close." During the taxable year ending December 31, 1975, Phoenix Plaza Associates incurred a loss of $ 313,684.79. On two separate Schedules K-1 for that year, the partnership reported that the distributive share of loss for the Estate of Joseph R. Applebaum was $ 76,044.52 and the distributive share of loss for Joseph R. Applebaum was $ 110,660.67. The sum of these last two figures, *477 $ 186,705.19, represents 59.52 percent of the $ 313,684.79 partnership losses incurred in 1975. Petitioners filed a joint 1975 income tax return (Form 1040) for the short taxable year of Joseph R. Applebaum (January 1, 1975, to August 22, 1975) and the normal calendar taxable year of Florence K. Applebaum (January 1, 1975, to December 31, 1975). On this return, petitioners reported a partnership loss from Phoenix Plaza Associates of $ 119,696. This figure was calculated by petitioners by dividing the $ 186,705.19 total allocable 1975 partnership loss by the number of days in 1975 (365) and multiplying by the number of days Joseph R. Applebaum was alive in 1975 (234). On a Form 1041 Fiduciary Income Tax Return for the taxable period beginning August 22, 1975, and ending June 30, 1976, the estate of Joseph R. Applebaum reported the remainder of the $ 186,705.19 1975 partnership loss, $ 67,009.19, as a loss from the partnership Phoenix Plaza Associates. In his statutory notice of deficiency, respondent disallowed the $ 119,696 of distributive partnership losses claimed on petitioners' final joint return (Form 1040) for 1975. It is respondent's position that the entire distributive *478 share of Phoenix Plaza Associates' loss for the partnership taxable year ending December 31, 1975 ($ 186,705.19) is includible in the fiduciary return of the decedent's estate for the taxable period ending June 30, 1976, and that no part of such loss may be included in the decedent's final joint income tax return. Petitioner, on the other hand, argues in the alternative: 1) that a conversion of decedent's partnership interest from a general partnership interest to a limited partnership interest occurred at decedent's death, closing the partnership taxable year as to decedent and making a pro rata portion of the 1975 Phoenix Plaza Associates loss reportable on decedent's final joint income tax return, or 2) that the executors of the estate of a decedent, acting on behalf of the estate and the decedent, may allocate in a fair and appropriate manner losses from the partnership for the taxable year in which the partner died between the decedent's lifetime period as a partner and the estate's post-death period as a partner, particularly where such an allocation has been approved by the surviving widow in the filing of a joint return with decedent and by the partnership in the preparation *479 and filing of its partnership return and attached Schedules K-1. Section 706(c), [2] in relevant part, provides: (c) CLOSING OF PARTNERSHIP YEAR.-- (1) GENERAL RULE.--Except in the case of a termination of a partnership and except as provided in paragraph (2) of this subsection, the taxable year of a partnership shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership. (2) PARTNER WHO RETIRES OR SELLS INTEREST IN PARTNERSHIP.-- (A) DISPOSITION OF ENTIRE INTEREST.--The taxable year of a partnership shall close-- (i) with respect to a partner who sells or exchanges his entire interest in a partnership, and (ii) with respect to a partner whose interest is liquidated, except that the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year. Such partner's distributive share of items described in section *480 702(a) for such year shall be determined, under regulations prescribed by the Secretary, for the period ending with such sale, exchange, or liquidation. Thus, except in the case of a termination of the partnership (as defined in section 708(b)) [3] or the sale or exchange of a decedent's partnership interest, a partnership's taxable year will continue both with respect to the decedent's interest and the partnership as a whole upon the death of a partner. In the case of Phoenix Plaza Associates, this means that the partnership's taxable year with respect to the interest of Joseph R. Applebaum continued to December 31, 1975, absent a sale or exchange of Joseph R. Applebaum's interest or other event terminating the entire partnership. *481 Petitioners' first argument is that there was such an event closing the partnership's taxable year, at least as to decedent's interest, on August 22, 1975. The consequence of such a closing would be that a pro rata portion of the partnership's calendar year 1975 losses could be reported by the petitioners on the decedent's final joint income tax return because the partnership's taxable year as to decedent would have closed with or within the decedent's last taxable year ending August 22, 1975. Section 1.706-1(c)(2), Income Tax Regs.[4] Petitioners contend that pursuant to the partnership agreements, on August 22, 1975, the decedent's general partnership interest was converted into a limited partnership interest. This conversion, they argue, constituted an exchange of decedent's entire interest in the partnership within the meaning of section 706(c)(2)(A)(i). *482 The question of whether the conversion of a general partnership interest into a limited partnership interest (or vice versa) in the same partnership constitutes an exchange for tax purposes has been the subject of considerable debate among commentators and practitioners, [5] but as yet has not been addressed directly by any court. [6] However, we do not feel this is an appropriate case to resolve such an important issue because, based on the facts presented, petitioners have not met their burden of demonstrating that a conversion of the decedent's general partnership interest actually occurred on August 22, 1975. *483 Petitioners urge that paragraph X of the partnership agreement unequivocally converted the decedent's interest from a general partnership interest to a limited partnership interest on death. This interpretation of the partnership agreement, though, was vigorously opposed by another general partner, Kurt Rostan, when it was first made to him in the fall of 1975. Rostan contended that the estate of Joseph R. Applebaum still remained liable under Pennsylvania law for various fixed and contingent partnership liabilities, particularly those arising before decedent's death. Rostan refused to amend the Certificate of Limited Partnership to state that decedent's estate had become a limited partner in Phoenix Plaza Associates. Two lawsuits arose on this issue of the interpretation of paragraph X and the attendant allocation of partnership liabilities. Only in 1978 were these lawsuits eventually settled. No part of the settlement agreement, however, states that decedent's interest was in fact converted from a general to a limited interest. That issue was never resolved among the partners, but rather was made moot by the prompt termination of the partnership after the signing of the *484 settlement agreement. Had the issue gone to trial, according to the district court judge approving the settlement the question would have been "extremely close." Petitioners, too, apparently thought the question not entirely frivolous. They settled the above lawsuits by assuming 50 percent of numerous partnership liabilities for which, according to their theory, they could not have been held responsible. Some of these assumed liabilities arose out of the continued operation of the partnership after the decedent's death. In the instant proceeding petitioners have only presented us with their side of the story about why decedent's interest was converted into a limited partnership interest at death. The facts available to us are as a result much more limited than those available to the district court at the time it approved the settlement agreement. Given the nature of the settlement agreement ultimately approved and the fact that the question of what kind of partnership interest the estate held was never resolved among the partners, we decline to hold as a matter of state law that paragraph X in and of itself converted the partnership interest of Joseph R. Applebaum from a general *485 to a limited interest at his death. Having failed to prove that a conversion from a general partnership interest to a limited partnership interest occurred, we need not reach the issue of whether such a conversion would constitute an exchange of the decedent's entire partnership interest at death under section 706(c)(2)(A)(i). [7] Accordingly, the partnership's taxable year did not close with respect to decedent on August 22, 1975, and the pro rata allocation rules of section 1.706-1(c)(2)(ii), Income Tax Regs., are inapplicable. Petitioners' second argument for the inclusion of a portion of the 1975 partnership losses of Phoenix Plaza Associates in decedent's final joint income tax return *486 is equally unavailing. In the event that no sale or exchange or other event terminating the partnership occurs on the death of a partner, section 706(c)(2)(A)(ii) provides that the partnership year shall not close as to the decedent partner. In such a case, section 1.706-1(c)(3)(ii), Income Tax Regs. provides that [t]he last return of a decedent partner shall include only his share of partnership taxable income for any partnership taxable year or years ending within or with the last taxable year for such decedent partner (i.e., the year ending with the date of his death). The distributive share of partnership taxable income for a partnership taxable year ending after the decedent's last taxable year is includible in the return of his estate or other successor in interest. [Emphasis supplied.] In these mandatory terms, the above regulation requires petitioners to include all of decedent's share of the calendar year 1975 partnership income of Phoenix Plaza Associates in the estate's fiduciary income tax return for the taxable period ending June 30, 1976, and none of that income on petitioners' final joint return. In Estate of Hesse v. Commissioner,74 T.C. 1307, 1312-1313 (1980), *487 we held that the word "income" in the above regulation applies in the case of losses as well as profits, notwithstanding the harsh consequences that may result thereby. Petitioners make two arguments in avoidance of the rule provided by section 1.706-1(c)(3)(ii), Income Tax Regs. First, they contend that the partnership's allocation of 1975 partnership losses between the decedent and his estate on the Schedules K-1 constituted an amendment to the partnership agreement which determined the partners' distributive shares of losses under sections 704(a) and 761(c). [8] Petitioners contend such a partnership allocation supersedes any allocation provided by section 1.706-1(c)(3)(ii), Income Tax Regs. Alternatively, they argue, to the extent that section 1.706-1(c)(3)(ii), Income Tax Regs., might prohibit such an allocation of losses by the partnership, it is inconsistent with Congressional intent and therefore invalid. *488 Initially, we note that the allocation of losses provided by Phoenix Plaza Associates on the 1975 Schedules K-1 differs from the allocation of losses made by petitioners between decedent's final joint income tax return and the estate's first fiduciary income tax return: whereas the partnership allocated $ 110,660.67 of loss to Joseph R. Applebaum, petitioners deducted $ 119,696 on the final joint income tax return. But even assuming that the Schedules K-1 were meant to sanction some allocation of decedent's distributive share of losses and such allocation constituted a valid amendment of the partnership agreement, we do not think such an agreement would be effective to override the rule provided by Congress in section 706(c)(2)(A)(ii). We have previously held that the allocation of partnership profits and losses provided by section 706(c)(2) in the case of the sale of an entire partnership interest or less than an entire partnership interest may not be superseded by the partnership agreement. Marriott v. Commissioner,73 T.C. 1129, 1139 (1980); Moore v. Commissioner,70 T.C. 1024, 1030-1032 (1978). Accord Rodman v. Commissioner,542 F.2d 845, 858 (2d Cir. 1976), *489 revg. on this issue a Memorandum Opinion of this Court. In part these decisions rested on assignment of income principles and in part on the structure of Subchapter K; but in any event, the more specific commandments regarding partnership income allocations in the case of the sale or exchange of a partnership interest contained in section 706(c)(2) were held superior to the general language of sections 704(a) and 761(c). We see no reason that a different result should obtain here where Congress has specifically directed that in the event of the death of a partner (and absent a concurrent sale, exchange or partnership termination) the taxable year of a partner "shall not close." Section 706(c)(2)(A)(ii). If Congress had intended to allow partnerships to allocate a decedent's share of partnership income between the pre-death and post-death periods, we doubt it would have used such mandatory language in this section. Section 706(c)(2)(A)(ii) contains no language stating its terms apply "except as otherwise provided in the partnership agreement" and we infer no such limitation. Consequently, we hold that an allocation provided by the regulations under section 706(c)(2)(A)(ii), if *490 such regulations are valid, takes priority over any attempted allocation of year of death partnership losses by the partnership agreement. We are buttressed in this conclusion by the legislative history surrounding section 706(c)(2)(A)(ii) and unsuccessful attempts to modify that section to obtain results along the lines desired by petitioners. As we detailed in Estate of Hesse v. Commissioner,supra at 1311-1312, section 706(c) was originally enacted as a relief measure to prevent the bunching of income in the decedent's final return when the decedent and the partnership he was a member of were on different taxable years. Nothing in the committee reports accompanying the Internal Revenue Code of 1954, however, indicates that Congress thought at all about the situation presented here and in Estate of Hesse v. Commissioner,supra, where the "relief" provision could actually bring on harsh results. Nevertheless, almost immediately after the enactment of Subchapter K, it was widely recognized that section 706(c) would operate to deprive a decedent partner in a calendar year partnership of the use of any partnership income in his final *491 pre-death taxable year. An Advisory Group on Subchapter K was impaneled in 1956. This body ultimately recommended that section 706(c)(2)(A)(ii) be repealed and replaced with a new section providing that the taxable year of a partnership should close with respect to a deceased partner as of the date of death unless the successor in interest of such partner filed an election not to close the taxable year. [9] This provision would thus have given decedent's successor the option of including a pro rata portion of a calendar year partnership's income or loss in the decedent's final joint return or including the entire year's partnership distributive share in the successor's return -- in essence, the very option petitioners seek by making the no-allocation rule of section 1.706-1(c)(3)(ii), Income Tax Regs., subordinate to any partnership allocation of year of death income. A bill adopting the Advisory Group approach, *492 H.R. 9662, the Trust and Partnership Income Tax Revision Act of 1960, passed the House of Representatives and was favorably reported out of the Senate Finance Committee. See H.R. Rep. No. 1231, to accompany H.R. 9662, 86th Cong., 2d Sess. 3, 30, 91 (1960); S. Rep. No. 1616, to accompany H.R. 9662, 86th Cong., 2d Sess. 80-81, 114 (1960). However, the bill was never passed by the Senate. [10]
If petitioners' contention that a successor may in effect elect to close the partnership year as to a decedent partner under the current provisions of Subchapter K were correct, the need for the relief proposed by H.R. 9662 would have been almost entirely obviated. We do not think petitioners' contention comports with the virtually contemporaneous interpretation of section 706(c)(2). Nor do we feel it our province to judicially enact a relief provision which, for whatever reasons, Congress chose not to adopt in 1960. Accordingly, however, harsh the result may be in the instant case of not allowing the decedent's successor, aided by a complaisant partnership, to elect a pro rata allocation, we feel constrained to hold that the rule *493 of section 706(c)(2)(A)(ii) is exclusive and may not be superseded by the partnership agreement. Petitioners' final argument is that to the extent section 1.706-1(c)(3)(ii), Income Tax Regs., requires that no apportionment of year of death partnership losses between the decedent's final return and the first return of decedent's successor is permitted, it is invalid. Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes; they should not be overruled except for weighty reasons. Commissioner v. South Texas Lumber Co.,333 U.S. 496, 501 (1948). Section 1.706-1(c)(3)(ii), Income Tax Regs., is not plainly inconsistent with section 706(c)(2)(A)(ii). It is a valid, and in light of the legislative history of Subchapter K, probably compelled interpretation of that section. We cited it with approval in Estate of Hesse v. Commissioner,supra at 1312-1313. Accordingly, this last argument of petitioners must be rejected. Decisions will be entered for the respondent.
Footnotes
1. Notwithstanding the fact that a "duplicate original" deficiency notice was issued by respondent to the non-corporate co-executors of the Estate of Joseph R. Applebaum and that, as a result, two separate petitions were filed in these consolidated cases, it is apparent from the record that there is only one deficiency amount at issue. The asserted deficiency arises out of a joint income tax return filed by Florence K. Applebaum and the Estate of Joseph R. Applebaum for the calendar year 1975 for Florence K. Applebaum and the short taxable year January 1, 1975, through August 22, 1975 (the date of his death) for Joseph R. Applebaum.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year before the Court.↩
3. Section 708 provides, in part: SEC. 708. CONTINUATION OF PARTNERSHIP. (a) GENERAL RULE.--For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated. (b) TERMINATION.-- (1) GENERAL RULE.--For purposes of subsection (a), a partnership shall be considered as terminated only if-- (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.↩
4. Section 1.706-1(c)(2)(ii), Income Tax Regs., provides in part: (ii) Inclusions in taxable income.↩ In the case of a sale, exchange, or liquidation of a partner's entire interest in a partnership, the partner shall include in his taxable income for his taxable year within or with which his membership in the partnership ends, his distributive share of items described in section 702(a), and any guaranteed payments under section 707(c), for his partnership taxable year ending with the date of such sale, exchange, or liquidation. In order to avoid an interim closing of the partnership books, such partner's distributive share of items described in section 702(a) may, by agreement among the partners, be estimated by taking his pro rata part of the amount of such items he would have included in his taxable income had he remained a partner until the end of the partnership taxable year. The proration may be based on the portion of the taxable year that has elapsed prior to the sale, exchange, or liquidation, or may be determined under any other method that is reasonable. * * *
5. See Banoff, "New Opportunities Now Exist for General and Limited Partnership Conversions," 52 J. Tax. 130↩ (1980); 2 McKee, Nelson and Whitmire, Federal Taxation of Partnerships and Partners, par. 15.04 [3][c], pp. 15-33 to 15-34 (1977); 1 Willis, Partnership Taxation, sec. 26.10, pp. 343-345 (2d ed. 1976) [hereinafter "Willis"]. 6. In Estate of Meyer v. Commissioner,58 T.C. 311 (1972), affd. per curiam 503 F.2d 556 (9th Cir. 1974), we held that an exchange of a general partnership interest in a certain partnership for a general partnership interest in another partnership was an exchange of property of like kind within the purview of section 1031(a) in a situation where both partnerships owned the same type of underlying assets. We also held that an exchange of a general partnership interest in one partnership for a limited partnership interest in another partnership was an exchange not falling within section 1031(a). Thus, swaps of similar interests in different partnerships may constitute an exchange for tax purposes. The precise question before us, namely, whether the conversion of an interest in the same partnership constitutes an exchange, was not decided in Meyer.↩
7. We note that in the instant case had an "exchange" of decedent's interest in fact occurred, not only would the taxable year of the partnership have closed with respect to decedent's interest at death under section 706(c)(2)(A)(i), but also, since decedent apparently owned 50 percent or more of the total interest in partnership capital and profits at the time of his death, the taxable year of the entire partnership would have closed at his death. Section 706(c)(1) and 708(b)(1)(B).↩
8. In 1975, section 704(a) provided: SEC. 704. PARTNER'S DISTRIBUTIVE SHARE. (a) EFFECT OF PARTNERSHIP AGREEMENT.--A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement. Section 761(c) provides: (c) PARTNERSHIP AGREEMENT.--For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement.↩
9. See Anderson and Coffee, "Proposed Revision of Partner and Partnership Taxation: Analysis of the Report of the Advisory Group on Subchapter K," 15 Tax L. Rev. 285, 309-310 (1960); 1 Willis, supra↩ note 5, at secs. 3.04 and 43.04, pp. 27, 592-594.
10. 1 Willis, supra↩ note, 5, at sec. 3.05, p. 28.