REPORTER PUB. CO., Inc. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 4542.

United States Court of Appeals
Tenth Circuit.

Jan. 30, 1953.

---

Thurman Hill, Washington, D. C., for petitioner.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack and Harry Baum, Sp. Assts. to the Atty. Gen., on the brief, for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented for our consideration is whether the appellant taxpayer sustained a deductible capital loss for income tax purposes by reason of the decision of the Supreme Court of the United States in Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013, holding illegal the by-laws of the Associated Press granting to appellant as a member thereof an exclusive membership in the Association and the exclusive right to Associated Press services in its community. The Tax Court in a decision reviewed by the full court unanimously held that no deductible loss was sustained and the taxpayer has appealed.

On March 1, 1940, taxpayer purchased the assets of the Independence Daily Reporter, a daily newspaper published at Independence, Kansas, for a total consideration of $150,000. A bond issue was necessary to finance the purchase of the paper. Included in the assets was a membership in the Associated Press which was valued by the engineer for the brokerage firm handling the bond issue at $70,735. The Associated Press membership under the by-laws existing at that time entitled the taxpayer to the exclusive news gathering

facilities of the Associated Press. Without appellant's consent, no competing paper in its territory could obtain such a membership and the benefits flowing therefrom. The taxpayer assigned a value of $79,734.67 to the Associated Press membership on its books.

In its decision the Supreme Court held that the by-laws of the Associated Press relating to the conditions under which new members might be admitted in territory where a newspaper held such a membership were illegal because they unlawfully restrained trade in violation of the Sherman Anti-Trust Act.[1] The effect of the decision was to prohibit any restriction upon a new membership based solely upon the status of the new member with respect to competition with an existing membership.

Following the decision by the Supreme Court, the taxpayer reduced the value of its membership on its books from $79,734.67 to $50,000 and took in its income tax return for the fiscal year in question a deduction of the difference of $29,734.67 from its gross income as a loss sustained in that year, resulting from such decision. The commissioner disallowed the deduction and imposed resulting deficiencies in tax. Before the Tax Court the taxpayer took the position that the decision of the Supreme Court completely destroyed the value of the capital asset consisting of the Associated Press membership; that its total value as reflected on its books should have been deducted and that the tax accountant who prepared the return failed to take the full deduction because he did not realize the legal effect of the decision. That was its position before the Tax Court and was the theory on which the case was tried and decided and that is the position it takes on this appeal.

■ There is no dispute in the applicable principles of income tax law relating to capital gains and capital losses or to the factors that must exist before one is chargeable with a capital gain or may take the benefit of a capital loss as a deduction from gross income. A taxpayer is not chargeable with a capital gain resulting from an enhanced value of a capital asset while it is still being used in the business; neither may he take a deduction from gross income because of the diminution in value of such an asset while it is still a part of the business and is being used in the business. Since there is no conflict in the decisions with respect to these principles of law, citing numerous decisions in support thereof would be superfluous and add nothing of value to the opinion.

Section 29.23(e)–1 promulgated under the Internal Revenue Code and made applicable to corporations by Section 29.23 (f)–1 provides that "losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses." And Section 29.23(e)–3 so far as material provides that when "the usefulness in the business of some or all of the assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as loss for the year in which he takes such action the difference between the basis * * * and the salvage value of the property."

■ These regulations implementing the statute make it clear that before one may take a capital loss deduction the capital asset must be liquidated, generally by sale, or in event by some definitely identifiable event or, if its usefulness in the business has been destroyed and it is not sold, it must be permanently discarded from use in the business.

■■ Since deductions from gross income are matters of legislative grace, one who seeks the benefit thereof must bring himself clearly within the statute or an effective regulation authorizing the deduction.[2] In line with these principles it has been held consistently that a deduction

---

1. 26 Stat. 209, 15 U.S.C.A. § 1 et seq.

2. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; Commissioner of Internal Revenue v. Thompson, 10 Cir., 193 F.2d 586; Chicago Mines Co. v. Commissioner, 10 Cir., 164 F.2d 785; Hales-Mullaly v. Commissioner, 10 Cir., 131 F. 2d 509.

under the statute and regulation in question may be claimed only when there is a closed transaction during the taxable year, generally evidenced by a sale of the asset or abandonment of the asset as completely worthless.[3]

For the purpose of the opinion, it may be conceded that the decision by the Supreme Court effected a diminution in value of the Associated Press membership. It is no doubt much less desirable since the holder thereof may no longer prevent a competitor from having such a membership. But this is a far cry from saying that it is valueless. The present membership still enables the taxpayer to receive all the services therefrom that he received before the decision by the Supreme Court. If it did not hold this membership, it would be seriously handicapped in the conduct of its business. If it did not hold such membership and applied for one, it would be required to pay an initial charge in addition to the regular charges for the services furnished and, if the taxpayer sold his business and transferred the membership with it, the purchaser likewise would be entitled to full benefits of the membership without the payment of initial fees, which otherwise would be required. There are other elements of value in the ownership of this membership which need not, however, be spelled out because in any event appellant has not brought itself within the statutory provisions entitling it to the claimed deduction. The best evidence of value is found in the fact that appellant continues to use the membership in the same way and with the same benefits as before the decision by the Supreme Court. If the membership had no value or utility, it would be a simple matter to surrender it and eliminate it entirely from the business. Then appellant would be entitled to the claimed deduction. But so long as the membership is being retained and used in the business, in the same way, for the same purposes and with the same beneficial results, it cannot be said to have no value.

We think the conclusions reached by us find support in the case of Consolidated Freight Lines v. Commissioner, 9 Cir., 101 F.2d 813. There the monopolistic rights of a certificate of public convenience and necessity for which a valuable consideration had been paid were conferred by statute. A statute subsequent to the purchase of the certificate abolished and wiped out the monopolistic features of the certificate. It was contended, as here, that this destroyed the value of the certificate and entitled the taxpayer to a capital loss deduction. While the facts are not identical with the facts in this case, we think the court's conclusion that the destruction of the monopoly resulted only in a diminution of value of the certificate is equally applicable here.

Affirmed.