ESTATE OF STANLEY HESSE, DECEASED, ELIZABETH B. HESSE, EXECUTRIX, AND ELIZABETH B. HESSE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1471–75.     Filed September 16, 1980.

---

■■■■■■■■

■■■■■■■■

*Richard A. Osserman* and *O. John Rogge*, for the petitioners.
*Rudolph J. Korbel*, for the respondent.

WILBUR, *Judge:* Respondent determined deficiencies in income tax of petitioners of $172,986.14 for the taxable year 1967 and of $70,619.47 for the taxable year 1968. Due to concessions by petitioners, the sole issue for our determination is whether the distributive share of 1970 net partnership losses for Stanley Hesse, deceased, is properly reportable by the estate on its fiduciary income tax return or whether it can be reported on the final joint income tax return of Stanley Hesse and Elizabeth Hesse, thereby allowing petitioners to utilize a net operating loss carryback for their taxable years of 1967 and 1968.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Stanley Hesse (the decedent or Mr. Hesse) died on July 16, 1970, a resident of New York, N.Y. Elizabeth B. Hesse (Mrs. Hesse or petitioner) is the executrix of the decedent's estate. She resided in New York, N.Y., at the time of the filing of the petition in this case.

Mr. and Mrs. Hesse filed joint income tax returns for the taxable years of 1967 and 1968. Elizabeth Hesse, individually, and Elizabeth Hesse, as executrix of the Estate of Stanley Hesse, filed a joint income tax return (1970 joint return) for her taxable year ending December 31, 1970, and for her deceased husband's taxable period of January 1, 1970, to July 16, 1970. On the 1970 joint return, petitioner deducted $391,587.18 as the decedent's share of net partnership losses of H. Hentz & Co. for the taxable year of 1970. Petitioner then carried back a large portion of the loss deduction to the taxable years of 1967 and 1968, which resulted in a substantial refund of taxes. Upon audit, respondent disallowed the partnership loss of $391,587.18 with respect to the 1967, 1968, and 1970 joint income tax returns of Mr. and Mrs. Hesse and, instead, allowed the amount as a deductible loss for the fiscal year July 16, 1970, to June 30, 1971,

on the fiduciary income tax return of the Estate of Stanley Hesse.

At the time of his death, Mr. Hesse was a general partner in the brokerage firm of H. Hentz & Co. (the partnership). During 1970, and for many years prior thereto, H. Hentz & Co. was a limited partnership engaged in the business of acting as brokers and dealers in securities and commodities, and underwriters of securities. Pursuant to a written partnership agreement, the capital contribution and interest in profits and losses of Mr. Hesse in the partnership for the year beginning January 1, 1970, was as follows:

Capital contribution ...................... $265,000
Net profits ................................... 6 percent
Net losses................................... 7.15 percent

The partnership agreement in effect for the year 1970 provided in article IX, B–1, as follows:

In the event of the death or withdrawal of a partner, his interest in the Firm shall cease as of the end of the month in which the death shall occur or the effective date of withdrawal, and his participation in the profits or losses, if any, shall be computed in accordance with the standard accounting practice of the Firm * * *. Reasonable reserves out of amounts due may be required and set aside for losses, expenses, bookkeeping adjustments, contingent liabilities and such other items as may affect profits or losses and if at any time or times such reserves are subsequently found by the Firm to be insufficient, then the withdrawn partner or the estate of the deceased partner shall, upon the request of the Firm, pay to the Firm such moneys as the Firm may deem necessary to provide for his proportionate share of such losses * * * provided that the cause upon which the liability, adjustment or loss is asserted occurred before the effective date of such withdrawal or death * * *. A deceased or withdrawn partner shall have no interest in the working assets of the Firm and his claim against the Firm shall be limited to the amount of his capital and his interest in such profits, if any, as of the date of death or withdrawal, less his share in such losses, if any. The interest of the deceased or withdrawn partner shall be ascertained by closing the books of the Firm at the end of the calendar month in which the death or withdrawal occurs, and the resulting figures shall be used to determine the amount of interest of the deceased or withdrawn partner in his capital account and in such profits or such losses as of the date of death or withdrawal * * *

During the year 1970, the partnership of H. Hentz & Co. sustained substantial losses. The losses were due both to losses from operations and to errors in properly reflecting purchases and sales in securities known as "cage errors." Although most of the "cage errors" were made in years prior to 1970, an

accounting was not made and the losses were not chargeable to the partners until 1970.

The books and records of the partnership were kept on the cash basis of accounting and disclosed that the decedent's share of distributive net loss from the partnership for the taxable year 1970 was $391,587.18. The partnership taxable year ended December 31, 1970. As a general partner in the firm of H. Hentz & Co., Mr. Hesse was liable, prior to the termination of his partnership interest, for his share of the losses sustained by the partnership. In 1972, the partnership filed a claim against Mrs. Hesse as executrix of the Estate of Stanley Hesse, deceased, for the deficit in the partnership account of Stanley Hesse. The resulting arbitration proceeding rendered a judgment against the Estate of Stanley Hesse for $209,144.68 in 1974.

## OPINION

Stanley Hesse died in July of 1970, the same year that a partnership in which he was a general partner sustained very substantial losses. It is undisputed that Mr. Hesse's share of the partnership losses for 1970 was $391,587.18. What is in dispute, however, is where these losses should be reported—on the income tax return of his estate or on the final joint income tax return of Stanley and Elizabeth Hesse. The issue is a critical one for Elizabeth Hesse, because if she can properly report the losses on the final joint return that she filed with her deceased husband in 1970, she is entitled to carry the unused part of the losses back to the taxable years of 1967 and 1968, and thereby receive sizeable refunds of taxes previously paid in those years.

Petitioner contends that the decedent's share of partnership losses properly belongs on the 1970 joint return because under the terms of the partnership agreement, Mr. Hesse's interest in the partnership was effectively terminated on the date of his death. Alternatively, she argues that Mr. Hesse's partnership interest became worthless prior to or on his death and, therefore, his entire investment, which she computes as $559,144.68,[1] is properly deductible on the 1970 joint return.

---

[1] Petitioner arrives at this figure as representative of Mr. Hesse's total lost investment in the partnership by adding his capital contribution ($265,000), the amount the estate voluntarily paid to the partnership ($85,000), and the sum awarded to the partnership as a result of the arbitration proceedings ($209,144.68).

Conversely, respondent argues that the situation is specifically governed by section 706(c)(2)(ii)[2] which provides that the taxable year of a partnership shall not close with respect to a partner who dies prior to the end of the partnership taxable year. Since the partnership taxable year ended December 31, 1970, whereas Mr. Hesse's taxable year ended on July 16, 1970, respondent maintains that the decedent's share of partnership losses for 1970 must be reported by his estate on its income tax return. Because we feel that the transaction is clearly controlled by section 706(c)(2)(ii), we agree with respondent.

We deal in this case with a provision of the Internal Revenue Code which, although enacted as a relief measure, has evolved into a rule of law which presents substantial and complex problems for successors in interest to deceased partners. Prior to the enactment of the Internal Revenue Code of 1954, the general rule was that at least so far as the decedent partner was concerned, the death of a partner closed the partnership taxable year, and thus his share of partnership income for the year was included in the decedent's final return. *Guaranty Trust Co. v. Commissioner*, 303 U.S. 493 (1938); see also 6 J. Mertens, Law of Federal Income Taxation, sec. 35.68, p. 224 (1975 rev.). Because prior to 1954, a partner was frequently on a different fiscal year than that of the partnership, this rule often resulted in a "bunching of income"—the decedent's final return might include up to 23 months of his distributive partnership share.[3]

In order to alleviate this bunching of income problem, Congress enacted, as part of the 1954 Code, section 706(c)[4] which

---

[2]All section references are to the Internal Revenue Code of 1954 as in effect for the taxable years in issue.

[3]The problem can be illustrated by the following example: P is a calendar year taxpayer and a member of the XYZ partnership whose fiscal year ends on Jan. 31 of each year. P dies on Dec. 31, 1951. Under the prior rule, P would report 23 months of partnership income on his final return—income for the 12-month period ending Jan. 31, 1951, as well as income for the 11-month period ending with his death on Dec. 31, 1951.

[4]Sec 706(c) provides in pertinent part:

(c) CLOSING OF PARTNERSHIP YEAR.—

(1) GENERAL RULE.—Except in the case of a termination of a partnership and except as provided in paragraph (2) of this subsection, the taxable year of a partnership shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership.

(2) PARTNER WHO RETIRES OR SELLS INTEREST IN PARTNERSHIP.—

(A) DISPOSITION OF ENTIRE INTEREST.—The taxable year of a partnership shall close—

(i) with respect to a partner who sells or exchanges his entire interest in a partnership, and

provides that the taxable year of a partnership does not close as a result of the death of a partner. Thus, under section 706(c)(2)(ii), the last return of a decedent partner includes only his share of taxable income for the partnership taxable year ending within or with the decedent partner's last taxable year (i.e., the short period ending with his date of death). The decedent's distributive share of partnership income for a partnership taxable year ending *after* his death is includable on the income tax return of the estate or other successor in interest. This result is made clear by the regulations promulgated under section 706(c), as well as the legislative history of the provision. See sec. 1.706(c)(3), Income Tax Regs.; H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A225–226 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 91 (1954).

When applied to the situation before us, section 706(c) requires that since the partnership's taxable year for 1970 ended *after* Mr. Hesse's final taxable year—the partnership's taxable year terminated on December 31, 1970, and Mr. Hesse's taxable year terminated on July 16, 1970—his distributive share of partnership profit or loss for the taxable year 1970 must be reported by his estate as his successor in interest.

Understandably, petitioner argues forcefully against this result since it operates to deprive her of carrying back the net operating loss of 1970 to the taxable years of 1967 and 1968 and therefore precludes obtaining substantial tax refunds for those years.[5] However, the statute, the regulations, and the legislative history of section 706(c) make it clear that this is the manner in which Congress determined that a decedent's distributive share of partnership income shall be reported. And although the regulations speak only of the decedent's share of partnership

---

(ii) with respect to a partner whose interest is liquidated, *except that the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year.* [Emphasis added.]

[5]There is no provision in the Internal Revenue Code allowing a carryback from the estate to the decedent's prior tax returns. Sec. 642(h) authorizes a passing *forward* of the net operating loss to beneficiaries succeeding to the property upon termination of the estate, but it applies only to a carryover which would be allowable to the estate in a taxable year subsequent to its termination, if in fact, it had not terminated. Thus, whether a net operating loss can be utilized will depend upon the income of the estate and the future income of the beneficiaries succeeding to the property, as well as the length of time before the estate is terminated.

profits, it follows logically that partnership losses must be treated in an identical manner.

Petitioner contends that, although under the partnership agreement, the interest of a decedent partner in the partnership was determined as of the end of the month in which the death occurred, Mr. Hesse's partnership was effectively terminated as of the date of death. Mrs. Hesse maintains that the termination of any interest in future profits and losses in effect amounted to a liquidation of Mr. Hesse's interest on July 16, 1970.

There are two answers to this argument. First of all, it is clear that Mr. Hesse's partnership interest was not liquidated on July 16, 1970. A final accounting between his estate and the partnership did not occur until many years later—after the arbitration award in 1974. Secondly, even if Mr. Hesse's interest in the partnership had been liquidated on July 16, 1970, it would not help petitioner under section 706(c). Unless there is a termination of the partnership, the only method by which a partnership year with respect to a decedent may be closed on the date of his death is where under the terms of the partnership agreement, there is a sale or exchange of his entire partnership interest on the date of death. See sec. 706(c)(2)(A)(i); sec. 1.706–1(c)(3)(iv), Income Tax Regs.[6] The liquidation of a decedent partner's interest is not treated as a sale or exchange of his entire interest. See secs. 1.708–1(b)(1)(ii) and 1.736–1(a)(6), Income Tax Regs.; see also 2 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, sec. 23.01(2)(c), p. 23–7 (1977).

As an alternative argument, petitioner contends that Mr. Hesse's interest in the partnership became worthless on or prior to his death and therefore his total investment in the partnership, calculated at $559,144.68,[7] is properly deductible on the decedent's final return under section 165(a).[8] Petitioner main-

---

[6] In addition, there are other ways that the decedent's distributive share can be reflected on his final return, even though the partnership year is not closed with respect to the decedent on his date of death. See 2 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, sec. 23.01(2), pp. 23–4, 23–7 (1977).

[7] See n. 1 *supra*.

[8] Sec. 165 provides in relevant part:

SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

tains that since losses due to errors in reflecting purchase and sales known as "cage errors" were discovered prior to Mr. Hesse's death, and since the decedent's interest in any future profits of the partnership was terminated on the last day of July of 1970, it follows that on his death his partnership interest was worthless, and that he therefore sustained a deductible loss under section 165(a).

Although imaginative, petitioner's alternative argument is basically irrelevant to the issue in this case, namely, who should report the decedent's distributive share of partnership losses for the fiscal year 1970. In effect, petitioner's position is that Mr. Hesse's *entire* partnership interest was forfeited at his death, and he should be allowed a loss for the forfeiture. In this connection, petitioner does not claim that the partnership was worthless, only that decedent's partnership interest was worthless at his death. Unfortunately, the facts do not support this premise.

A loss is allowable as a deduction under section 165(a) only in the taxable year in which the loss is sustained. A loss is treated as sustained during the taxable year in which the loss occurs, *as evidenced by closed and completed transactions.* Sec. 1.165–1(d)(1), Income Tax Regs.

In the case before us, there was no closed or completed transaction with which to measure a deductible loss. As stated before, Mr. Hesse's interest was in no way disposed of or liquidated on July 16, 1970. His partnership interest continued to be carried on the partnership books with subsequent adjustments made thereto, until a final account between his estate and the partnership was made several years later. A mere decline or shrinkage in value of an asset does not constitute a deductible loss (*Beatty v. Commissioner*, 46 T.C. 835 (1966); *Reporter Publishing Co. v. Commissioner*, 18 T.C. 86 (1952), affd. 201 F.2d 743 (10th Cir. 1953)), and absent some kind of sale or exchange, death does not constitute an identifiable factor which will

---

\*      \*      \*      \*      \*      \*      \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

trigger recognition of gain or loss for the decedent partner. *Kean v. Manning*, 128 F. Supp. 756 (D. N.J. 1955); sec. 1.706–1(c)(3)(iv), Income Tax Regs. Anticipated losses are not deductible under section 165(a), even though it is evident from the circumstances that a loss will, in fact, be sustained at a future date. *Ewing Thomas Converting Co. v. McCaughn*, 43 F.2d 503 (3d Cir. 1930), cert. denied 282 U.S. 897 (1931).

Although we feel constrained to hold for respondent in this case because of the authoritative statutory mandate contained in section 706(c), we are not immune to the plights of petitioner or other successors in interest to decedent partners. As stated before, section 706(c) was originally enacted as a relief measure for the estates of decedent partners so that the decedent's final return filed by his representative would not include more than 12 months of partnership income when the partner and the partnership were on different fiscal years. See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A225–226 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 91 (1954). This problem, however, has become almost an anachronism due to the enactment of section 706(b)(1) which generally requires that partnerships formed after 1954 adopt the same taxable year as that of all of its principal partners—which will normally be a calendar year.

Instead of benefiting most successors in interest to decedent partners, section 706(c)(2)(A)(ii) now serves to penalize them. Because the decedent's final return does not include his distributive share of partnership profits for the year, if he had little other income, the benefit of any deductions and exemptions incurred by the decedent during his final year will be lost. See sec. 691(a)(1). In addition, the advantage of income splitting by filing a joint return with his spouse will be precluded. Furthermore, if the decedent has withdrawn most of the profits for the year prior to his death, there will be little left over to distribute to his successor, although in actuality his successor will pay income tax on the full distributive share. See sec. 1.706–1(c)(3)(vi), example (4), Income Tax Regs.

These problems have been recognized by those well versed in partnership taxation, and recurrent appeals have been issued for Congress to change the rule to allow a decedent partner's final return to include his share of distributive profits for the short taxable year ending with his death. See, e.g., 1 A. Willis,

Partnership Taxation 592 (2d ed. 1976); D. Anderson & M. Coffee, "Proposed Revision of Partner and Partnership Taxation: Analysis of the Report of the Advisory Group on Subchapter K," 15 Tax L. Rev. 285, 309–310 (1959–60).[9] So far, however, Congress has not seen fit to act upon the matter.

In addition, the focus of the commentators has been on the wasting of deductions, exemptions, and the benefits of income splitting where there is little or no income other than that derived from the partnership. As serious as these problems are, they pale in comparison to the case before us today, where the statute serves to deny a widow of close to a quarter of a million dollars in tax refunds through net operating loss carrybacks, simply because her husband, unlike the other general partners, died during the middle of the year. Such a result is both illogical and unfair. Hopefully, Congress will correct the problem before this unfortunate result is repeated.

*Decision will be entered for the respondent.*

---

[9]For a recent discussion of the problem and a proposal to change the general rule to one which closes the partnership taxable year with respect to a deceased partner on the date of death unless there is a bunching of income problem, see the American Law Institute Federal Income Tax Project Tentative Draft No. 4, Apr. 14, 1980, pp. 13–35.