724 F.2d 375
 84-1 USTC P 9117
 ESTATE OF Joseph R. APPLEBAUM, Deceased, the Fidelity Bank,
Co-Executor, Joseph K. Koplin, Co-Executor, John
A. Eichman, Co-Executor
v.
COMMISSIONER OF INTERNAL REVENUE.
Appeal of ESTATE OF Joseph R. APPLEBAUM, in No. 82-3035.
Florence K. APPLEBAUM, Appellant in No. 83-3036
v.
COMMISSIONER OF INTERNAL REVENUE.
 Nos. 83-3035, 83-3036.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 13, 1983.
Decided Dec. 28, 1983.
 
 Jules I. Whitman (argued), Dilworth, Paxson, Kalish & Kaufman, Philadelphia, Pa., for Florence K. Applebaum.
 John A. Eichman, 3d, Clark, Spahr, Eichman & Yardley, Philadelphia, Pa., for Estate of Joseph R. Applebaum.
 Gayle P. Miller (argued), Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Div., Gary R. Allen, U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellee.
 Before ADAMS, HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This appeal arises from a dispute over the short taxable year of Joseph R. Applebaum ("Applebaum"). Applebaum was a general partner in Phoenix Plaza Associates, a limited partnership ("the partnership"). Midway through 1975, Applebaum died. That year the partnership suffered a substantial loss. The question presented here is how Applebaum's share of that loss should be allocated between his final income tax return, filed by his widow, Florence K. Applebaum, and the income tax return filed by his estate.
 
 
 2
 The applicable statutory provision, I.R.C. Sec. 706 (1976), plainly requires that all of Applebaum's share of the partnership loss be allocated to his estate. Appellants in this case, Florence K. Applebaum and Estate of Joseph R. Applebaum ("appellants"), urge us to disregard the statutory requirement so that they may allocate the partnership loss between them on a pro rata basis. They advance a number of policy reasons in support of their position. Appellants presented similar arguments to the United States Tax Court, sitting below, which rejected their position in a thorough and well-reasoned opinion. Applebaum v. Commissioner, 43 T.C.M. (CCH) p 39,034(M) (1982). We will affirm the judgment of the Tax Court substantially for the reasons expressed in that opinion.
 
 I.
 
 3
 Phoenix Plaza Associates was organized in 1968 to develop and operate a shopping center in Phoenixville, Pennsylvania. Applebaum, one of several general partners, owned 59.52 percent of the partnership at the time of his death on August 22, 1975.
 
 
 4
 Section X of the partnership agreement provided in part that upon the death of a general partner, that partner's general interest "shall be converted into that of a Limited Partner and be subject to the provisions of the agreement relating to a Limited Partner's interest...." Following Applebaum's death, however, a substantial disagreement arose between the remaining general partners and Applebaum's estate regarding the estate's continuing liability for certain partnership obligations incurred prior to Applebaum's death. As a result of this dispute, the remaining general partners refused to amend the Certificate of Limited Partnership to reflect the change in status of Applebaum's interest from general to limited. This dispute dragged on for nearly three years, spawning litigation in the federal and the state courts. The estate and the remaining partners eventually settled their dispute, but continued to disagree whether Applebaum's interest had converted from general to limited on his death.
 
 
 5
 In 1975, the year of Applebaum's death, the partnership suffered a loss of $313,684.79. Applebaum's 59.52 percent share amounted to $186,705.19. Because Applebaum's estate succeeded to his interest in the partnership midway through the year, the issue arose how that loss should be allocated between Applebaum's short taxable year and the estate's. Appellants' solution was to divide the loss pro rata between them, based on the portion of the year (234 days) that Applebaum was alive. The tax return filed by Florence K. Applebaum claimed $119,696 of the loss, and the estate's return claimed the remaining $67,009.19.[1]
 
 
 6
 Appellee, the Commissioner of Internal Revenue ("Commissioner"), disallowed the portion of the partnership loss claimed on Applebaum's final return by his widow. The Commissioner contends that the entire $186,705.19 loss must be allocated to the estate. Appellants contested the Commissioner's determination in the United States Tax Court and following that court's adverse determination, appealed to this court. They raise the same contentions here as below, and we affirm the Tax Court in rejecting them.
 
 II.
 
 7
 Appellants contend first that we must overlook the plain statutory language of I.R.C. Sec. 706(c)(2)(A)(ii), which states in relevant part that "the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year." (emphasis added)[2] If the partnership's taxable year is not deemed closed prior to the end of its usual taxable year, all of the income or loss attributable to the deceased partner's share for that year must be allocated to his estate. Treas.Reg. Sec. 1.706-1(c)(3)(ii).[3] If the partnership year is deemed to close on a partner's death, then the pro rata allocation urged by appellants would be proper.
 
 
 8
 Section 706(c)(2)(A)(ii) unequivocally states that the death of a partner will not close the partnership year. Appellants nevertheless advance two policy arguments for disregarding this plain language. The first is that subsection 706(c)(2)(A) runs counter to the broad tax policy of allowing partnerships great freedom in allocating profits and losses among partners. See I.R.C. Secs. 704(a), 761(c) (1976). According to appellants, no other section of the Internal Revenue Code denies partnerships this "flexibility." They contend also that section 706(c)(2)(A)(ii) violates assignment-of-income principles by retroactively allocating all of a deceased partner's loss or income to his estate, even though the estate was only a partner for part of the taxable year.[4] In making both arguments, appellants seek to override plain, particular statutory language by citing to overarching policy concerns.
 
 
 9
 The courts have repeatedly rejected such efforts with respect to closely related provisions of the Code. See, e.g., Rodman v. Commissioner, 542 F.2d 845, 858 (2d Cir.1976); Marriott v. Commissioner, 73 T.C. 1129, 1139 (1980); Moore v. Commissioner, 70 T.C. 1024, 1030-32 (1978). In Hesse v. Commissioner, 74 T.C. 1307 (1980), the Tax Court squarely rejected a taxpayer's attempt to circumvent the clear command of the provision at issue in this case, section 706(c)(2)(A)(ii). The Tax Court in the present case followed Hesse in rejecting appellants' claim. In each of these cases the courts have stressed the unambiguous import of the enacted language. While on occasion reproving the sometimes harsh result, they have declined to create an exception where Congress had not.
 
 
 10
 Appellants urge us to examine the legislative history of section 706(c)(2)(A)(ii), which they contend demonstrates that Congress did not intend to deny the widows of deceased partners the tax benefits of their husband's partnership losses. The Senate and House reports accompanying this provision do indicate that Congress was mainly concerned with the bunching of income that occurred when mid-year decedent partners realized income from their partnership interests,[5] and was not concerned with the provision's effect where, as here, the partnership showed a loss. S.Rep. No. 1622, 83d Cong., 2d Sess. 91 (1954); H.R.Rep. No. 1337, 83d Cong., 2d Sess. A225-26 (1954), U.S.Code Cong. & Admin.News 1954, p. 4017.
 
 
 11
 However enlightening this legislative history, we simply cannot ignore the unequivocal language of the provision. Section 706(c)(2)(A)(ii) could have excluded partnerships that declared losses rather than income, but it does not. Moreover, we cannot ignore the fact that Congress has not in the ensuing thirty years amended the provision to correct its "error."[6]
 
 
 12
 Congress has been aware for many years of the problem faced by taxpayers in appellants' situation, but has neither amended nor repealed section 706(c)(2)(A)(ii). The plain language of that section prevents appellants from making the pro rata allocation they seek. We reject appellants' efforts to circumvent the plain language of section 706(c)(2)(A)(ii).
 
 III.
 
 13
 Appellants present a second argument to support their attempted allocation. I.R.C. Sec. 706(c)(2)(A)(i) states that a partnership's taxable year shall close "with respect to a partner who sells or exchanges his entire interest in a partnership."[7] Appellants argue first that Applebaum's partnership interest converted on his death from a general to a limited interest, and second that this conversion constituted a "sale or exchange" sufficient to close Applebaum's taxable year.
 
 
 14
 The court below rejected appellants' argument at the first stage, finding that because of the intrapartnership dispute following Applebaum's death, his general interest never in fact converted to a limited one. Given the intensity of that dispute, the multiple lawsuits it engendered, and the continued refusal of the surviving general partners to amend the Certificate of Limited Partnership to reflect any change in the status of Applebaum's interest in the partnership, we cannot say that the Tax Court erred. Consequently, we need not reach appellants' further and highly controversial[8] argument that such a conversion would constitute a sale or exchange for purposes of section 706(c)(2)(A)(i).
 
 
 15
 The opinion and decision of the Tax Court will be affirmed.
 
 
 16
 ADAMS, Circuit Judge, concurring.
 
 
 17
 Although I join in the result reached by the majority, I write separately because I am persuaded that this case requires more than simply applying the plain language of I.R.C. Sec. 706(c) (1976).[1]
 
 
 18
 As I read the statute, Sec. 706(c) prohibits only the early closing of a partnership's tax year as the result of a partner's death. Granted that the partnership tax year must continue after a partner's death, Sec. 706(c) nonetheless leaves open the possibility of allocating gain or loss between a deceased partner and his successor-in-interest during the course of an ongoing partnership tax year. Yet in its regulation, the IRS has precluded the option of making such an allocation. Instead, the IRS has by regulation chosen a construction of Sec. 706(c) which frustrates the Congressional intent underlying the statute and prevents a fair reflection of a deceased partner's economic activities. Thus to my mind, this case involves not the application of the plain meaning of a statute, but rather the validity of a regulation. While I am troubled by the harsh result compelled by the IRS regulation, I cannot say--in view of the deference owed agency interpretations--that the regulation is sufficiently contrary to the 1954 Code to require its invalidation.[2]
 
 
 19
 No one contests the fact that Congress enacted Sec. 706(c) with one evident purpose--to provide relief from the unfair tax burden imposed when a partner dies during the partnership tax year. Prior to 1954, the tax year of a partnership generally had to close with respect to a deceased partner at the time of death. See Guaranty Trust Co. v. Comm'r, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975 (1938); Hesse v. Comm'r, 74 T.C. 1307, 1311 (1980). Accordingly, if the partnership had a tax year which ran from January 31 to January 31, and the decedent reported income on a calendar-year basis, then a partner who died on December 31 would have to report not only the twelve months of partnership income that had accrued by the preceding January 31, but also the eleven additional months of partnership income which accrued at the time of the partner's death. Consequently, under the pre-1954 rule, a partner could be taxed for up to 23 months of "bunched" income[3] on his final pre-death return.
 
 
 20
 In 1954, Congress enacted Sec. 706(c) to provide relief from this "bunching" of income. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. at A225-A226, reprinted in 1954 U.S.Code Cong. & Ad.News 4017, 4092-4093; S.Rep. No. 1622, 83d Cong., 2d Sess. 91, reprinted in 1954 U.S.Code Cong. & Ad.News 4621, 4723-4724; see also Hesse, supra, 74 T.C. at 1311-12. As the Tax Court in this case recognized, the legislative history reveals no evidence suggesting that Congress intended Sec. 706(c) to do anything other than provide relief from the inequitable effects of bunching. Applebaum v. Comm'r, 43 T.C.Memo p 39,034 (1982) at 1425-26.[4] In construing Sec. 706(c) to prohibit the allocation attempted by the Applebaums, the IRS has taken a relief measure and turned it into an additional tax burden on its intended beneficiaries--deceased partners.
 
 
 21
 The IRS interpretation of Sec. 706(c) also contradicts economic common sense, preventing in this case a fair portrayal of Mr. Applebaum's pre-death income. Through August 22, 1975, the date of Mr. Applebaum's death, his share of the partnership loss was $110,000. Appellant's Br. at 16. Had Mr. Applebaum lived until January 1, 1976, no one would have questioned the right of his widow to deduct both the $110,000 lost through August and the remaining $76,000 lost by the end of 1975. But because Mr. Applebaum did not live an extra four months, his widow was denied all tax deductions stemming from the partnership for the entire year, even for that 8-month period when her husband was alive and was sustaining a partnership loss. The tax consequences of this distorted picture of Mr. Applebaum's pre-death income have been correctly described by the Tax Court as "both illogical and unfair." Hesse, supra, 74 T.C. at 1316.
 
 
 22
 This type of misallocation of losses has been prohibited by the courts under another subsection of Sec. 706(c). See, e.g., Richardson v. Comm'r, 693 F.2d 1189 (5th Cir.1982), Williams v. U.S., 680 F.2d 382 (5th Cir.1982); Snell v. U.S., 680 F.2d 545 (8th Cir.1982); Marriott v. Comm'r, 73 T.C. 1129 (1980); Moore v. Comm'r, 70 T.C. 1024 (1978); and Rodman v. Comm'r, 542 F.2d 845 (2d Cir.1974). Specifically, the line of case law beginning with Rodman bars tax-shelter arrangements whereby a successor partner obtains an interest late in the partnership taxable year and is then allowed to assume a full year's worth of losses. Relying in part on the assignment-of-income principle, Rodman and its progeny hold that a partnership may not allocate gains or losses to a successor partner for a period during which the successor held no interest in fact. Similarly, the assignment-of-income principle--which in essence mandates that partnership distributions realistically reflect a partner's participation in the firm--suggests that the Applebaums' allocation of losses should be permitted. If Applebaum's estate is conceived to be a successor partner, assignment-of-income principles should prohibit the allocation of the entire 1975 loss to Applebaum's estate, which held an interest in fact only after August 22, 1975. Thus, if Mr. Applebaum had sought to sell his partnership interest on the day before his death, in order to give the purchaser a tax loss, the IRS would not permit it.
 
 
 23
 As I view it, therefore, the IRS construction of Sec. 706(c) is at odds both with economic reality and the congressional policy underlying the provision. The majority upholds this construction solely on the ground that it is mandated by the plain and unequivocal language of Sec. 706(c). I cannot agree.
 
 
 24
 Although Sec. 706(c) clearly prohibits the closing of a partnership tax year at a partner's death, it simply does not address whether partnership income may be allocated between a deceased partner and his successor-in-interest during a continuing tax year. To be sure, Sec. 706(c)'s language is mandatory: the provision states unequivocally that "the taxable year of a partnership shall not close as a result of the death of a partner." But in view of the legislative history of Sec. 706(c), it would appear that Congress chose this preemptory language because it was statutorily overturning the old rule that had created the bunching problem, not because it sought to produce the result reached today. The only language which plainly prevents the allocation attempted by the Applebaums is in Treasury Regulation Sec. 1.706-1(c)(3)(ii):
 
 
 25
 The last return of a decedent partner shall include only his share of partnership taxable income for any partnership taxable year or years ending within or with the last taxable year for such decedent partner.... (emphasis added)
 
 
 26
 The key issue, then, is whether this regulation can be upheld as a permissible interpretation of the tax code. Admittedly the burden of showing a tax regulation's invalidity is heavy: ordinarily courts owe deference to a regulation that "implement[s] the congressional mandate in some reasonable manner." U.S. v. Vogel Fertilizer Co., 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982), quoting U.S. v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). Even so, "this general principle of deference, while fundamental, only 'sets the framework for judicial analysis; it does not displace it.' " Id., quoting U.S. v. Cartwright, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973).[5] As the Supreme Court recently cautioned,
 
 
 27
 the "deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." Accordingly, while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act, they must not "rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute."
 
 
 28
 Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority, --- U.S. ----, ----, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted).
 
 
 29
 Thus a prime purpose of judicial review of administrative agencies must be to insure compliance with congressional policy as expressed in both the language of the enabling act and its legislative history. Despite the deference owed administrative agencies, a regulation is not a statute, and the IRS is not the Congress. Where, as here, the IRS appears to have subtly subverted the policy underlying a particular provision of the tax code, a court must carefully scrutinize the regulation's fidelity to the overall statutory framework. See note 5 supra.
 
 
 30
 Section 704(a) provides the strongest argument that the 1954 Code requires the IRS to permit allocations such as that attempted by the Applebaums. That provision, which commands that "A partner's distributive share ... shall ... be determined by the partnership agreement," embodies a fundamental policy decision to permit partners flexibility in allocating the tax burden among themselves. H.R.Rep. No. 1337, 83d Cong., 2d Sess. 65 (1954); 1 McKee, Nelson & Whitmire, Federal Taxation of Partnerships and Partners Sec. 1.03 (1977). Indeed, the McKee treatise calls allocative flexibility "[o]ne of the principal legislative objectives of Subchapter K." Id. See also I.R.C. Sec. 76l(c) (1976). To the extent that Treas.Reg. Sec. 1.706(c)(3)(ii) prevents a partnership from agreeing to a reasonable allocation of its tax loss, the regulation would appear to conflict with the statutory mandate of Sec. 704(a).[6]
 
 
 31
 Several other code provisions not mentioned by the majority or the Tax Court do, however, indicate that the IRS may preclude the allocation sought to be made by the Applebaums. Section 691(a)(1) requires that "all income not properly includible" in a decedent's pre-death income must be reported by some other entity, generally the estate. Whether Mr. Applebaum's allocation of partnership losses is "properly includible" on his pre-death tax return is addressed by Secs. 702(a), 706(a) and 443(a). Section 702(a)(9) provides that "[i]n determining his income tax, each partner shall take into account separately his distributive share of a partnership's ... taxable income or loss." Section 706(a) states in turn that "the inclusions required by" Subchapter K shall be based on partnership income "for any taxable year of the partnership ending within or with the taxable year of the partner."[7] Finally, Sec. 443(a)(2) mandates that a "taxpayer in existence during only part of what would otherwise be his taxable year" shall make a tax return for that "short period." Since Applebaum's tax year therefore closed on August 22, 1975, and since the partnership's tax year did not terminate until December 31, 1975, these provisions make it clear that no partnership gain or loss for 1975 is an "inclusion required" on Applebaum's 1975 pre-death return. While I am not persuaded that the 1954 Code compels the additional step taken by the IRS--i.e., absolutely prohibiting other reasonable inclusions such as Mr. Applebaum's loss allocation--I must conclude, albeit reluctantly, that Treas.Reg. Sec. 1.706-1(c)(3)(ii) is not so inconsistent with these latter tax statutes as to require its invalidation.
 
 
 32
 Even though I believe that the Applebaums' allocation faithfully implements the congressional policy behind Sec. 706(c) and accurately depicts his economic participation in the partnership, there is nonetheless sufficient support for today's conclusion in other sections of the tax code to sustain it. Accordingly, I concur in the result reached by the majority.
 
 
 
 [1]
 The estate declared no income in 1975, so the partnership loss was of no benefit to the estate
 
 
 [2]
 The full text of section 706(c) is as follows:
 (c) CLOSING OF PARTNERSHIP YEAR.--
 (1) GENERAL RULE.--Except in the case of termination of a partnership and except as provided in paragraph (2) of this subsection, the taxable year of a partnership shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership.
 (2) PARTNER WHO RETIRES OR SELLS INTEREST IN PARTNERSHIP.--
 (A) DISPOSITION OF ENTIRE INTEREST.--The taxable year of a partnership shall close--
 (i) with respect to a partner who sells or exchanges his entire interest in a partnership, and
 (ii) with respect to a partner whose interest is liquidated, except that the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year.
 
 
 [3]
 The full text of this regulation is as follows:
 (ii) The last return of a decedent partner shall include only his share of partnership taxable income for any partnership taxable year or years ending within or with the last taxable year for such decedent partner (i.e., the year ending with the date of his death). The distributive share of partnership taxable income for a partnership taxable year ending after the decedent's last taxable year is includible in the return of his estate or other successor in interest. If the estate or other successor in interest of a partner continues to share in the profits or losses of the partnership business, the distributives share thereof is includible in the taxable year of the estate or other successor in interest within or with which the taxable year of the partnership ends. See also paragraph (a)(1)(ii) of Sec. 1.736-1. Where the estate or other successor in interest receives distributions, any gain or loss on such distributions is includible in its gross income for its taxable year in which the distribution is made.
 
 
 [4]
 It is well-established that one taxpayer may not assign income to another taxpayer. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). This principle has been applied to prevent partnerships from retroactively assigning income or losses from a full taxable year to a partner who entered the partnership after the start of the year. Rodman v. Comm'r, 542 F.2d 845, 857-58 (2d Cir.1976); Moore v. Comm'r, 70 T.C. 1024 (1978)
 
 
 [5]
 It was once common for partnerships to have taxable years different from their partners. Before the passage of Sec. 706(c)(2)(A)(ii), consequently, the final tax returns for decedent partners could contain up to 23 months of partnership income. By providing that a partner's death would not close his taxable year, Congress ensured that a decedent partner's final return would reflect no more than one year's partnership income; income from a taxable year closing after the partner's death would be reflected on the tax return of his estate. See Hesse v. Comm'r, 74 T.C. 1307 (1980)
 
 
 [6]
 The Advisory Group on Subchapter K recommended, shortly after the passage of Sec. 706(c)(2)(A)(ii), that the provision be repealed and replaced with a provision that would have permitted a pro rata allocation like that sought by appellants. Anderson & Coffee, Proposed Revision of Partner and Partnership Taxation: Analysis of the Report of the Advisory Group on Subchapter K, 15 Tax.L.Rev. 285, 309-10 (1960). A bill embodying this recommendation passed the House of Representatives in 1960, and was favorably reported out of the Senate Finance Committee. However, the bill was never passed by the full Senate. 1 A. Willis, Partnership Taxation Sec. 3.05, at 28 (2d ed. 1976)
 
 
 [7]
 For the full text of section 706(c), see note 2 supra
 
 
 [8]
 See Banoff, New Opportunities Now Exist for General and Limited Partnership Conversions, 52 J.Tax. 130 (1980); 2 McKee, Nelson & Whitmire, Federal Taxation of Partnerships and Partners p 15.04[c], at 15-33 to 15-34 (1977); 1 A. Willis, Partnership Taxation Sec. 26.10, at 343-45 (2d ed. 1976)
 
 
 [1]
 Section 706(c) includes two subsections, Secs. 706(c)(1) and 706(c)(2)(A)(ii), both of which contain the language applicable to the present dispute: "the taxable year of a partnership shall not close as the result of the death of a partner." For simplicity in this opinion, "Sec. 706(c)" is used to refer specifically to this prohibition, even though the full text of Sec. 706(c) includes many provisions unrelated to nonclosure of the tax year at a partner's death. See Sec. 706(c) reprinted in full, Maj.Op. at 376-377 n. 2
 
 
 [2]
 I do not take issue with the majority's treatment of the other argument raised by Applebaum on appeal: that the partnership tax year ended at Applebaum's death pursuant to I.R.C. Sec. 706(c)(2)(A)(i) (1976). Like the majority, I cannot say that the Tax Court erred in finding that Applebaum's partnership interest did not convert from a general to a limited interest at his death
 
 
 [3]
 Because almost two years' income was reported on a single year's tax return, the earnings of such deceased partners would be taxed at a higher rate than would apply if they had lived for the rest of the partnership taxable year. It was this phenomenon that rendered "bunching" of income a problem. See Hesse, supra, 74 T.C. at 1311
 
 
 [4]
 Although the Tax Court sought to supplement this evidence with post-enactment history, that approach proves very little. In 1960, Congress considered a bill, H.R. 9662, which included a provision expressly giving partners the option of electing to allocate partnership income between the pre-death period and the estate's return. H.R.Rep. No. 1231, to accompany H.R. 9662, 86th Cong., 2d Sess. 3, 30, 91 (1960); S.Rep. No. 1616, to accompany H.R. 9662, 86th Cong., 2d Sess. 80-81, 114 (1960). Unlike the Tax Court, I am not persuaded that Congress's failure to pass H.R. 9662 indicates Congressional approval of the result in this case. See Applebaum, supra, p 39,034 at 1426. First, it is generally agreed that H.R. 9662 failed to pass the Senate because of controversy over a provision completely unrelated to Sec. 706(c). Willis, Partnership Taxation Sec. 305 (2d ed. 1976). Second, Congress's failure to approve an amendment six years after passage of Sec. 706(c) proves nothing about congressional intent in 1954
 
 
 [5]
 Because the Supreme Court's deference to Treasury Regulations appears to waver, it is difficult to state precisely the appropriate standard of review. While the Court has often repeated a formulation requiring very broad deference, see Fulman v. U.S., 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978) (Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes" and "should not be overturned except for weighty reasons"), the current trend in tax cases appears to be shifting towards more careful scrutiny of IRS regulations. See U.S. v. Vogel Fertilizer Co., 455 U.S. 16, 24-26, 102 S.Ct. 821, 827-28, 70 L.Ed.2d 792 (1982) (invalidating Treasury Regulation that did not "harmonize" with the "origin and purpose" of the enabling act); Rowan Cos. v. U.S., 452 U.S. 247, 252-53, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981) (invalidating Treasury Regulation that failed to construe the term "wages" in "consistent and reasonable manner"); U.S. v. Cartwright, 411 U.S. 546, 557, 93 S.Ct. 1713, 1719, 36 L.Ed.2d 528 (1973) (invalidating Treasury Regulation even though it was "not, on its face, technically inconsistent" with the enabling provision of the Internal Revenue Code)
 This apparent variation may be due in part to the tendency to describe deference more or less broadly depending on whether the court ultimately intends to sustain or invalidate a regulation. See Davis, Administrative Law Treatise, Sec. 7:13 at 60-61 (2d ed. 1979). But in the area of tax regulations, certain reasons continue to justify a shift toward more careful judicial oversight.
 First, it is well settled that a court may, when appropriate, substitute its judgment for an agency's when the regulation is "interpretative" as opposed to "legislative." General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); Batterton v. Francis, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); see also Davis, supra Sec. 7:8 at 36-43. A Treasury Regulation such as the one before us that was promulgated pursuant to the Commissioner's general authority to "prescribe all needful rules and regulations," 26 U.S.C. Sec. 7805(a) (1976), is clearly "interpretative" and therefore calls for less deference than a regulation issued under a specific delegation of authority to define a particular statutory term. Rowan Cos., supra, 452 U.S. at 253, 101 S.Ct. at 2292.
 Second, the functional reasons for deference to agencies--their expertise and experience--do not carry the same force in the context of the peculiarly detailed statutory framework of the tax code. Few provisions of the tax statutes use highly general terms such as the "public interest" which force an agency to assume relatively broad policymaking powers. See National Muffler Dealers Association v. U.S., 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979). When dealing with specific language and legislative history like that before us today, courts have enough expertise and experience to provide a meaningful check on interpretations chosen by the Treasury Department.
 Finally, one other reason, although not articulated by the courts, justifies special scrutiny of tax regulations. As the agency charged with collecting revenue, the IRS is in some respects a civil prosecutor, and the Internal Revenue Code is in a sense a criminal code. Just as the courts check prosecutorial zeal by resolving doubts in criminal statutes in favor of the defendant, so too should the courts examine tax regulations with a view towards protecting taxpayers from the institutional self-interest of the IRS.
 
 
 [6]
 The Tax Court rejected the significance of Sec. 704(a)'s flexibility principle, reasoning that a series of decisions suggest that Sec. 706(c) supersedes Sec. 704(a). Applebaum, supra, p 39,034 at 1425. See cases cited supra at 12. This analysis is, however, inapposite. In the present case, the question is not whether Sec. 704(a) allocations should override Sec. 706(c), but instead whether Sec. 704(a) allocations may override a regulation, Sec. 1.706-1(c)(3)(ii)
 
 
 [7]
 Section 706(a) provides in full:
 In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 and section 707(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner.