Ray J. HOPE and Doris F. Hope

v.

UNITED STATES of America.

Alvin A. ARCEMONT and Lana B. Arcemont

v.

UNITED STATES of America.

Clyde P. PARKER and Bessie A. Parker

v.

UNITED STATES of America.

Allen L. LOFTON

v.

UNITED STATES of America.

William C. HIGHTOWER and Susan B. Hightower

v.

UNITED STATES of America.

Bill J. RAMEY and Diane M. Ramey

v.

UNITED STATES of America.

Marinus QUIST and Kathleen H. Quist

v.

UNITED STATES of America.

Richard A. BARTON and Eva C. Barton

v.

UNITED STATES of America.

Richard B. WEIR and Barbara S. Weir

v.

UNITED STATES of America.

Civ. A. Nos. 82–5295, 84–3088 to 84–3095.

United States District Court, E.D. Louisiana.

Aug. 14, 1985.

Julian P. Brignac, Robert W. Nuzum, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiffs.

Glenn L. Archer, Jr., Asst. Atty. Gen., Steven Shapiro, Steven Gremminger, Tax Div., Dept. of Justice, Washington, D.C., John Volz, U.S. Atty., New Orleans, La., for defendant.

WICKER, District Judge.

Plaintiffs in these consolidated civil actions seek to recover federal income taxes paid by them for the calendar year 1981. The parties have stipulated to all relevant facts [1] and agree that the sole remaining issue involves a *res nova* question of law.

This matter is now before the Court on cross motions for summary judgment concerning the validity of certain Temporary as well as Proposed Treasury Regulations.

After considering the briefs and arguments of counsel and the applicable law, the Court finds in favor of the plaintiffs and against the defendant for the following reasons, to-wit:

---

1. See Record Documents Nos. 10, 12, 13, 14, 15, 16, 17, 18 and 19 in Civil Action No. 82–5295. Henceforth, all references to record documents and/or joint exhibits shall be to Civil Action No. 82–5295.

Although the parties have stipulated to all relevant facts, for purposes of clarity a brief summary of the facts follows:

## FACTS

Plaintiffs, who were employed by Tidewater, Inc., were participants in a stock option plan (hereinafter the "Plan") adopted by Tidewater on April 23, 1975. (Joint Exhibit 1). In accordance with the terms of the Plan, stock options were granted to plaintiffs on March 17, 1976 and provided that plaintiffs could exercise their options by payment in cash, certified or bank cashier's check, or the equivalent.

In 1980 Tidewater amended the Plan adding a new additional means by which shareholders could exercise their options. In lieu of tendering cash or its equivalent, and subject to the sole discretion of the Plan's stock option committee, shareholders were granted the alternative of exercising their options by paying with previously acquired Tidewater stock. (Joint Exhibit 3).

During the first half of 1981, between January 3 and June 26, plaintiffs exercised a number of their Tidewater options. Six plaintiffs exercised options by tendering checks. Pursuant to the 1980 amendment to the Plan, the remaining three plaintiffs exercised their Tidewater options by delivering previously acquired stock in lieu of cash or the equivalent thereof.

On August 13, 1981, Congress enacted The Economic Recovery Tax Act (hereinafter ERTA), Public Law 97–34. ERTA § 251(a) created Section 422A of the Internal Revenue Code (hereinafter IRC) which provides for a new type of statutory stock option, christened the "incentive stock option" (hereinafter ISO).[2]

Tidewater filed its fiscal year corporate income tax return on December 15, 1981 and elected at that time, as required by ERTA § 251(c), to convert its previously nonqualified stock option plan into an incentive stock option plan. Just six days later, Treasury promulgated Temporary Treasury Regulation § 14a.422A–1 which declared that the 1980 amendment to the Tidewater Plan would result in the denial to plaintiffs of the favorable capital gains treatment typically granted to persons who exercise ISO's.

The plaintiffs subsequently filed their 1981 individual income tax returns in accordance with the provisions of Temporary Treasury Regulation § 14a.422A–1. In adhering to this Regulation, the plaintiffs treated their options as "nonqualified" stock options rather than ISO's and thus included in their 1981 taxable incomes (as *ordinary* income) the difference between the amounts they paid for the options in 1976 and the fair market value of the Tidewater stock on the date the options were exercised. When the plaintiffs later timely filed claims for refund on the basis that their options should qualify as ISO's, such claims were denied by IRS. Consequently, the plaintiffs filed these actions seeking to have Regulation § 14a.422A–1 declared invalid. As a final postscript, Treasury promulgated on February 7, 1984 Proposed Regulations §§ 1.422A–3(c)(2) and 1.425–1(e)(5)(i).

In their stipulations of the facts, the parties to this litigation have phrased the issue to be decided as follows:

Whether Plaintiffs are entitled to a refund ... on the basis of their claim that Question and Answer 9 and 10 of Temporary Regulations Section 14a.422A–1 and Proposed Regulations Section 1.422A–3(c)(2) and Section 1.425–1(e)(5)(i) do not properly interpret ERTA Section 251 in providing that an amendment prior to January 1, 1981 of an option granted prior to January 1, 1981, to allow an

---

**2.** 26 U.S.C. § 422A provides in pertinent part:

(b) *Incentive Stock Option* —For purposes of this part, the term "incentive stock option" means an option granted to an individual for any reason connected with his employment by a corporation, if granted by the employer corporation or its parent or subsidiary corpo-

ration, to purchase stock of any such corporations, but only if—

. . . . .

(4) the option price is not less than the fair market value of the stock at the time such option is granted.

. . . .

optionee the right to exercise the option with previously-acquired corporate stock will cause the option, pursuant to Section 425(h) of the Internal Revenue Code, to be treated as newly granted on the date it was amended with the result that the option must be repriced to the fair market value on the date of such amendment to qualify as an incentive stock option.

Under the facts of this case, the issue to be decided is whether an amendment to a non-qualified stock option plan that allows the exercise of options by tendering previously acquired stock, made nearly a year prior to the plan's conversation into an ISO plan, will result in the loss of capital gain treatment typically afforded ISO holders upon disposition of their stock.

Plaintiffs, in their claims for refund, contest the IRS's interpretation of the parameters of § 425(h) as set forth in Temporary Regulation § 14a.422A–1.[3] In particular, the plaintiffs challenge the validity of Questions and Answers 9 and 10 of such regulation:

*Q–9:*

If an option granted on or after January 1, 1976, was amended between its date of grant and August 13, 1981, will such an amendment affect the option's eligibility for ISO treatment?

*A–9:*

An amendment to an otherwise eligible option (or plan) prior to August 13, 1981, will be subject to the rules of section 425(h). If, pursuant to section 425(h), the amendment is a modification, extension, or renewal of the option, such amendment shall be considered as the granting of a new option. In order for such an option to be eligible for ISO treatment, the option (and plan) must comply with the section 422A qualification requirements (see A–2(c)). The option will be deemed to have been granted on the date it was amended. Thus, the

option price cannot be less than the fair maket value of the stock on that date. If the corporation wishes to retain the original grant price (and grant date) of the option, the corporation may do so by rescinding the amendment that was either a modification, extension, or renewal pursuant to section 425(h), so long as such rescission occurs prior to the earliest of the exercise of the option, the election of ISO treatment, and August 14, 1982. To be effective, such rescission must apply to the entire option. For example, . . . . .

\*        \*        \*        \*        \*        \*

*Q–10:*

An option granted during 1978 was amended during 1980 to add the following features: an alternative stock appreciation right, *the right to exercise the option with previously-acquired corporate stock,* and the right to receive a cash bonus upon the exercise of the option. . . . If the option is to be elected as an ISO, which of the above amendments is either a modification, extextension, or renewal within the meaning of section 425(h) so that the option will be treated as newly granted on the date it was amended? [emphasis added]

*A–10:*

Any one of the above amendments will cause the option, pursuant to section 425(h), to be treated as newly granted on the date it was amended.

The fact pattern set out in the above regulation is duplicative of that now before this Court. The focal point of this litigation is the foregoing Regulation's provision that the modification rules of IRC § 425(h) are applicable to the plaintiffs' fact situations. Briefly, § 425(h) provides that any "modification" to a statutory stock option that confers an "additional benefit" to the option holders shall result in the options being treated as *newly* granted.[4] These

---

**3.** Temporary Treasury Regulation § 14a.422A–1, promulgated on December 21, 1981, employs a question and answer format to address sundry points of concern to taxpayers relevant to ISO transitional rules. Of the thirty-nine questions

and answers contained therein, the plaintiffs only take issue with numbers 9 and 10.

**4.** 26 U.S.C. § 425(h) provides in pertinent part:

seemingly innocuous terms can result in severely adverse tax ramifications on options sought to be classified as ISO's. Included among the requisite elements for ISO status enumerated in IRC § 422A[5] is the mandate that the option price (set at the time of grant) must not be less than the fair market value of the stock at the time the option is "granted." However, when there has been a modification to an option and such modification falls under the auspices of § 425(h), the fair market value at the time of the modification (rather than back in time to the date of original grant of the option) will be the yardstick for determining ISO status. Under the facts of the instant suits, the option price set in 1976 was clearly "less than" the fair market value of the Tidewater stock when the Plan was modified in 1980. Consequently, treating the 1980 amendment as subject to the § 425(h) rules results in a loss of ISO status for the plaintiffs' options.

The loss of ISO status in turn results in a loss of capital gain treatment. When the plaintiffs' options were nonqualified stock options, they were subject to the provisions of IRC § 83(a). As such, the exercise of such options by a shareholder gives rise to *ordinary* income in the year of exercise.[6]

(1) *In general.*—For purposes of this part, if the terms of any option to purchase stock are modified, extended, or renewed, such modification, extension, or renewal shall be considered as the granting of a new option.

.    .    .    .    .

(2) *Definition of modification.*—The term "modification" means any change in the terms of the option which gives the employee additional benefits under the option, but such term shall not include a change in the terms of the option—
    (A) attributable to the issuance or assumption of an option under subsection (a);
    (B) to permit the option to qualify under sections 422(b)(6), 422A(b)(5), 423(b)(9), and 424(b)(2); or
    (C) in the case of an option not immediately exercisable in full, to accelerate the time at which the option may be exercised.

**5.** *See* Note 2, *supra.*

**6.** 26 U.S.C. § 83(a) provides:
*General rule.*—If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—

To the contrary, statutory stock options such as ISO's are governed by IRC §§ 421–425. Under those statutes, a shareholder may recognize *capital* gain or loss and delay such recognition until the year in which he sells or exchanges the stock acquired at the time of exercise of the statutory stock option. It is this distinction between *ordinary* (26 U.S.C. § 83) versus *capital* (26 U.S.C. § 421, *et seq.*) income or loss, as well as the timing of recognition of such income or loss, that lies at the root of this litigation.

■ Question and Answer 9 and 10 of Temporary Regulation § 14a.422A–1, and the manner in which they interpret the parameters of IRC § 425(h), are to be considered valid as long as they implement the congressional mandate in some reasonable manner. *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981). To overcome the presumption of validity, a challenging party must demonstrate that the contested regulation is unreasonable and plainly inconsistent with the underlying statute(s). *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981); *Zemurray Founda-*

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over
(2) the amount (if any) paid for such property,
shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. The preceding sentence shall not apply if such person sells or otherwise disposes of such property in an arm's length transaction before his rights in such property become transferable or not subject to a substantial risk of forfeiture.
    26 U.S.C. § 83(e) provides in pertinent part:
    *Applicability of section*—This section shall not apply to—
    (1) a transaction to which section 421 applies.

*tion v. United States,* 687 F.2d 97 (5th Cir.1982).

The parties to this litigation have conceded in their briefs that the contested regulations are of an interpretative nature. Since a court can independently measure the Commissioner's interpretation against a specific IRC section, an "interpretative regulation"[7] is to be given less deference than a regulation issued under a specific grant of authority (i.e., a "legislative" regulation). *Rowan,* 452 U.S. at 251, 101 S.Ct. at 2292. The jurisprudence is well settled that a court may, when appropriate, *substitute* its own judgment for an agency's when the regulation is an interpretative one. *CWT Farms, Inc. v. C.I.R.,* 755 F.2d 790 (11th Cir.1985), *citing, General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). "The current trend in tax cases appears to be shifting towards more careful scrutiny of IRS regulations." *Estate of Applebaum v. Commissioner of Internal Revenue,* 724 F.2d 375 (3d Cir. 1983).

In presenting their challenge to Temporary Treasury Regulation § 14a.422A–1, plaintiffs point out that their options were IRC § 83 options at the time of the 1980 amendment. They observe that § 425(h) is not now, nor has it ever been applicable to § 83 nonqualified stock options, and therefore, the challenged regulations exceed the scope and authority of ERTA § 251 and its underlying authority by retroactively applying the modification rules of § 425(h) to options which at the time of their amendment, were not even subject to such rules.

The jurisprudence lends strong support to the plaintiffs' point of view. In determining whether a particular regulation carries out the congressional mandate in a proper manner, a court must look to see whether the regulation "harmonizes with the plain language of the statute, its origin, and its purpose." *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979). The following language of IRC § 425(h) clearly limits the scope of its reach:

(1) *In general.*—For purposes *of this part,* if the terms of any option to purchase stock are modified, ..., such modification, ... shall be considered as the granting of a new option. [emphasis added]

The words "of this part" compels an analysis of the structure of the Internal Revenue Code.

The Internal Revenue Code consists of nine Subtitles that are subdivided in the following reverse progression: Subtitle—Chapter—Subchapter—*Part*—Subpart. IRC § 425(h) falls under Subtitle A, Chapter 1, Subchapter D, *Part* II of the Code. "Part II (i.e., the "of this part" referred to in § 425(h)(1) consists of the following Code sections:

§ 421    General rules
§ 422    Qualified stock options
§ 422A   Incentive stock options
§ 423    Employee stock purchase plans
§ 424    Restricted stock options
§ 425    Definitions and special rules

As is evident from the "plain" language of § 425(h)(1), the modification rules of § 425 apply *only* to the preceding five Code sections located in "Part" II of Subchapter *D.*

Section 83, on the other hand, is located in Subchapter *B* of Chapter 1, Subtitle A. There is *nothing* in the statute which extends § 425(h) to § 83 stock options. To the contrary, § 83(e) expressly states that "This section *shall not* apply to ... a transaction to which section 421 applies."[8]

---

7. "Interpretative" regulations are issued pursuant to the Commissioner's (of Internal Revenue) general authority to prescribe all needful rules and regulations, 26 U.S.C. § 7805. *CWT Farms, Inc. v. C.I.R.,* 755 F.2d 790, 800. "Legislative" regulations are issued under a specific delegation of authority by Congress under 26 U.S.C.

§ 994(b)(1) and have the same effect as a valid statute. *Id.; Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977).

8. *See* note 2, *supra;* IRC § 421 provides the general rules for statutory stock options, including ISO's.

Thus, the "plain" language of *both* §§ 425 and 83 make it clear that they are mutually exclusive.

Accordingly, the Court concludes that the modification rules of IRC § 425(h) do not apply to amendments made to § 83 nonqualified stock option plans. The plaintiffs' options were § 83 options when granted in 1976, when amended in 1980, and when exercised in the early part of 1981. The fact that those options subsequently (post-August 13, 1981) underwent a metamorphosis by an election of ISO status does not justify an enlargement of the scope of § 425(h) modification rules. Such an extension or enlargement is clearly inconsistent with the plain language of both 26 U.S.C. § 83 and 26 U.S.C. § 425(h).

The Court also finds such an extension of the § 425(h) rules to be entirely unreasonable. At the time Tidewater made its 1980 amendment to allow the exercise of options by delivering previously acquired stock, there were *no* adverse tax ramifications to such a move. In fact, IRS enticed Tidewater into making just a modification with its 1980 issuance of Revenue Ruling 80–244, 1980–1 C.B. 234. The essence of this ruling provides that an option holder will not recognize gain or loss when a nonqualified stock option is exercised by delivering previously acquired stock in full or partial payment of the option price. For the Treasury to then later promulgate a regulation that severely penalizes a taxpayer for having taken an action that the IRS itself stated was free of negative tax implications defies reason and constitutes an abuse of the discretion given the Secretary of Treasury by 26 U.S.C. § 7805. "An abuse of discretion may be found where the retroactive regulation alters settled prior law or policy upon which the taxpayer justifiably relied and if the change causes the taxpayer to suffer inordinate harm." *CWT Farms, Inc., supra,* 755 F.2d at 802.

A review of the legislative history similarly contradicts Treasury's attempt to penalize plaintiffs for the pre-election (of ISO status) amendment to their options. Senate Report 97–144 [9] states that "An option will not be disqualified because of the inclusion of any condition not inconsistent with the qualification requirements nor because the corporation may make a cash payment to the employee at the time of exercise." Not only did the 1980 amendment add a condition to the plaintiffs' options that was *not* inconsistent with ISO qualification requirements enumerated in IRC § 422A(b), but that same condition is specifically allowable as a permissive feature of ISO's by IRC § 422A(c)(5):

> *Permissive provisions.*—An option which meets the requirements of subsection (b) shall be treated as an incentive stock option even if—
>
> (A) the employee may pay for the stock with stock of the corporation granting the option.

Thus, when the plaintiffs' nonqualified options were reincarnated as ISO's, they came into their new lifeform with the full weight of their pre-election amendments. This Court concludes that those amendments are not subject to the modification rules of IRC § 425(h) as long as they are not inconsistent with the ISO qualification requirements expressly enumerated in IRC § 422A. Those provisions in Temporary Treasury Regulation § 14a.422A–1 holding to the contrary are unreasonable and inconsistent with the plain language of IRC §§ 422A and 425(h) and the legislative history.

This unreasonableness is highlighted by the disconcerting rescission rules contained in Answer 9 of such Regulation:

> If the corporation wishes to retain the original grant price (and grant date) of the option, the corporation may do so by rescinding the amendment that was either a modification, extension, or renewal pursuant to section 425(h), so long as such rescission occurs prior to the *earliest* of the exercise of the option, the election of ISO treatment, and August 14, 1982. [Emphasis added]

---

**9.** 97th Congress, 1st Sess. 97 (1981), *reprinted in* U.S.Code Cong. & Ad.News 105, 200–204.

Plaintiffs argue that this rescission provision discriminates against options that were exercised between January 1, 1981 and August 13, 1981 (the date § 422A was enacted). As noted by the plaintiffs, and as demonstrated below, this provision does indeed box them into a Catch-22 predicament:

(1) date of exercise of
    options         = Jan. 3, 1981
(2) date of election of ISO
    treatment    = Dec. 15, 1981
(3) August 14, 1982   = August 14, 1982

The Court notes that the "earliest" of the above three dates is January 3, 1981 (actually, the period spanning January 3 until the last option was exercised on June 26). Thus, in a rather fascinating paradox, Temporary Treasury Regulation § 14a.422A–1 required plaintiffs to have *rescinded* the 1980 amendment not only *before* ISO status was elected for their options, but *even before* ISO's existed. Of course this is absurd and only demonstrates that this regulation does not and was not meant to apply to the fact situation at bar. The Government offers no explanation to justify the denial of a rescission right to those taxpayers who exercised options between January 1 and August 1, 1981. Nor does Senate Report 97–144 indicate a legislative intent that this should be the case:

> In addition, the terms of a stock option plan or an option issued before 1982 can be modified to conform to the incentive stock option rules within one year of the date of enactment of the bill, *without the modification being considered as giving rise to a new option requiring a new option price.*[10] [Emphasis added]

To deny a feasible rescission alternative to the plaintiffs is unreasonable and inconsistent with the purpose of the statutes and the intent of the legislature.

This Court concludes that the IRS's reach far exceeds its legally permissible grasp under the facts of this case. Although the plaintiffs have framed the issue in this case as one of retroactivity, this Court suggests that it is more one of applicability.

■ Accordingly, Temporary Treasury Regulation § 14a.422A–1 is invalid to the extent that it applies the modification rules of IRC § 425(h) to a pre-August 13, 1981 amendment to an IRC § 83 nonqualified stock option, subsequently converted into an ISO, where such amendment allows the exercise of an option by tendering previously acquired stock.

However, even if the Regulation were held to apply to the facts of this case, it is invalid to the extent that it fails to provide a reasonable alternative to stock options exercised between January 1, 1981 and August 13, 1981.

■ Plaintiffs also seek to have Proposed Treasury Regulations §§ 1.422A–3(c)(2) and 1.4251(e)(5)(i)[11] declared invalid.

---

10. *See* note 9, *supra.*

11. Proposed Treasury Regulation § 1.422A–3(c)(2), recites, in pertinent part:

(2) An amendment to an otherwise eligible option (or plan) prior to August 13, 1981, will be subject to the rules of section 425(h). If, pursuant to section 425(h), the amendment is a modification, extension, or renewal of the option, such amendment shall be considered as the grant of a new option. Such an option is not eligible for conversion into an incentive stock option unless the option (and plan) comply with the section 422A qualification requirements. Since the option will be considered to have been granted on the date it was amended, the option price cannot be less than the fair market value of the stock on that date. If the option price is less than the fair market value of the stock on the date the option was amended, the corporation may qualify the option by adjusting the option price, so long as such adjustment occurs prior to the earliest of the exercise of the option, the date of the election under paragraph (b) of this section (if applicable), or August 14, 1982. If the corporation wishes to retain the original grant price (and grant date) of the option, the corporation may do so by rescinding the amendment, so long as such rescission occurs prior the earliest of the exercise of the option, the date of the election under paragraph (b) of this section (if applicable), or August 14, 1982. If only a portion of an option is to become an incentive stock option, the adjustment of the option price or the rescission of the amendment need apply only to that portion.

. . . .

Proposed Treasury Regulation § 1.425–1(e)(5)(i) recites:

Since proposed regulations are nothing more than arguments advanced on brief by the Government, a ruling on the validity of the proposed regulations is inappropriate. As the Second Circuit Court of Appeals stated in *LeCroy Research Systems Corporation v. C.I.R.*, 751 F.2d 123 (2d Cir.1984), "Proposed Regulations are suggestions made for comment; they modify nothing.... If the Commissioner wanted this regulation to have binding effect, it could have been issued as a temporary regulation." *See also, F.W. Woolworth Co. v. Commissioner*, 54 T.C. 1233 (1970).

Accordingly;

IT IS ORDERED that the motions of plaintiffs for summary judgment is hereby GRANTED and plaintiffs are entitled to judgments as follows:

Ray J. and Doris F. Hope, in the amount of $103,912.00, plus interest and other statutory additions;

Alvin A. and Lana B. Arcemont, in the amount of $18,095.00, plus interest and other statutory additions;

Clyde P. and Bessie A. Parker, in the amount of $18,911.55, plus interest and other statutory additions; Allen L. Lofton, in the amount of $31,778.99, plus interest and other statutory additions;

William C. and Susan B. Hightower, in the amount of $22,946.00, plus interest and other statutory additions;

Bill J. and Diane M. Ramey, in the amount of $29,141.00, plus interest and other statutory additions;

Marinus and Kathleen H. Quist, in the amount of $663.00, plus interest and other statutory additions;

Richard A. and Eva C. Barton, in the amount of $40,906.00, plus interest and other statutory additions; and

Richard B. and Barbara S. Weir, in the amount of $61,696.00, plus interest and other statutory additions.

The time or date when an option is modified, extended, or renewed shall be determined, insofar as applicable, in accordance with the rules governing determination of the time or date of granting an option provided in paragraph (c) of § 1.421–7. For purposes of sections 421 through 425, the term "modification" means any change in the terms of the option (or change in the terms of the plan pursuant to which the option was granted) which gives the optionee additional benefits under the option regardless of whether the optionee in fact benefits from the change in the terms. For example a change in the terms of the option, which shortens the period during which the option is exercisable, is not a modification. However, any one of the following changes is a modification: a change which provides more favorable terms for payment for the stock purchased under the option, such as the right to tender previously acquired stock; a change which provides an extension of the period during which an option may be exercised, such as after termination of employment; a change which provides an additional benefit upon exercise of the option, such as the payment of a cash bonus; and a change which provides an alternative to the exercise of the option, such as a stock appreciation right. Finally, a change which provides, either by its terms or in substance, that the optionee may receive an additional benefit under the option at the future discretion of the grantor, is a modification both at the time the option is changed and at the time the benefit is actually granted. Where an option is amended solely to increase the number of shares subject to the option, such increase shall not be considered as a modification of the option, but shall be treated as the grant of a new option for the additional shares.