**Ray J. HOPE and Doris F. Hope, et al., Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 85–3623.

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1986.

Michael J. Roach, Steven Gremminger, Jonathan Cohen, Glenn L. Archer, Asst. Atty. Gen., Michael L. Paup Chief, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert W. Nuzum, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Julian P. Brignac, New Orleans, La., for plaintiffs-appellees.

Before JOLLY, HILL, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

This case involves the construction of the retroactivity provision [§ 251(c)(1) and (2)]

of the incentive stock option section of the Economic Recovery Tax Act of 1981 ("ERTA"), Pub.L. No. 97–34, § 251(c)(1) & (2) 95 Stat. 172, 257–58 (1981) [hereinafter referred to as ERTA]. Additionally, the modification rule contained in I.R.C. § 425(h) and Question and Answer 9 and 10 of Temporary Regulations relating to Incentive Stock Options, 26 C.F.R. § 14a.422A–1 (1986) must be construed as they interrelate with the other provisions. The district court approved the taxpayers' construction of the statute, which results in their entitlement to a refund under the circumstances here presented. Why the IRS chose to appeal, in light of the fact that, regardless of the outcome, the effects of this decision are revenue-neutral,[1] is a mystification to this Court. Nevertheless, we **AFFIRM** the district court.

## I. BACKGROUND

Nine plaintiffs, key employees of Tidewater, Inc., participated in the company's nonqualified stock option plan adopted April 23, 1975. In accordance with the terms of the Plan, stock options were granted to plaintiffs in 1976 and provided that they could exercise their options by payment in cash or the equivalent.

On June 20, 1980, pursuant to Rev.Rul. 80–244, 1980–2 C.B. 234, Tidewater's board of directors amended the plan and provided for the exercise of stock options by making payment not only in cash equivalents but also and alternatively by the delivery of Tidewater common stock of the same class as the class of stock subject to the options. The stock option agreements were subsequently formally amended in October, 1980 to incorporate this change.

On various dates between January 3 and June 26, 1981, each of the taxpayers exercised, or partially exercised, the stock options that had been granted in 1976 and purchased varying shares of Tidewater

common stock. Six of the taxpayers purchased their shares making payment by check, while three of them exercised their options and purchased their shares of Tidewater common stock by delivering previously acquired Tidewater common stock.

On August 13, 1981, ERTA was enacted. ERTA section 251(a) provided for the enactment of Internal Revenue Code section 422A, which created a new type of statutory stock option known as an incentive stock option ("ISO"). The ISO created thereby must ordinarily conform to a number of technical requirements. *See* I.R.C. § 422A. ERTA section 251(c)(1) and (2) contained the effective date and transitional rules, which permitted the new, more favorable stock option treatment to be accorded retroactively to options that had been granted on or after January 1, 1976 and had been exercised on or after January 1, 1981, or were outstanding on January 1, 1981.

On November 3, 1981, IRS promulgated temporary regulations (26 C.F.R. § 5c.0(e) (1986)) facilitating the section 251(c) retroactive election for ISO treatment, with which Tidewater promptly and timely complied. Subsequent to Tidewater's adoption of retroactive ISO classification, on December 21, 1981, the IRS issued a new Temporary Regulations section 14a.422A–1 containing questions and answers relating to ISO's. 26 C.F.R. § 14a.422A–1 (1986). Question and Answer 9 of this temporary regulation provided that a pre-ERTA amendment to an option granted on or after January 1, 1976 and outstanding on January 1, 1981 would be subject to I.R.C. § 425(h). As a result of the § 425(h) application, if such amendment constituted a modification, extension or renewal of the option under section 425(h), the amendment would be considered the grant of a new option, which would have to satisfy the fair market value requirement contained in I.R.C. § 422A(b)(4).[2] Question and Answer

---

**1.** See *infra* note 3.

**2.** The district court aptly explained the ramifications of this result:

These seemingly innocuous terms can result in severely adverse tax ramifications on options sought to be classified as ISO's. Included among the requisite elements for ISO status enumerated in IRC § 422A is the mandate

9 contained, however, a rescission alternative permitting the granting corporation to rescind the pre-ERTA amendment and retain the original grant price and grant date for an option that had been modified by rescinding the amendment prior to the earlier of: (1) the date of exercise of the option; (2) the date of retroactive election for incentive stock option treatment; and (3) August 14, 1982. Question and Answer 10 of the Temporary Regulations provided that an option granted during 1978 that was amended during 1980 to add the right to exercise the option with previously-acquired corporate stock resulted in the option's being treated as newly granted on the date it was amended under section 425(h).

The net effect of the Temporary Regulations was to deprive these taxpayers of the retroactive availability of ISO status, since by the time the Temporary Regulations were promulgated, Tidewater was not able to conform the stock options to their requirements and they had already exercised their options.

The appellees' tax consequences pursuant to the applicable Temporary Regulations reflect the basic distinction between statutory stock options, such as ISO's, and nonstatutory stock options originally held by taxpayers. A statutory stock option is subject to the provisions of I.R.C. §§ 421–425, including ERTA-promulgated § 422A. In general, an employee is not taxed at the event of grant or exercise of a statutory stock option and will recognize capital gain or loss when the stock acquired pursuant to the option is sold. The granting corporation obtains no I.R.C. § 162 business expense deduction on the grant or exercise by the employee.

A nonstatutory stock option, received by these taxpayers in 1976, is subject to § 83(a) of the Internal Revenue Code. The employee recipient does not recognize income upon grant of the option but is taxed at ordinary income rates upon its exercise, amounting to the difference between the fair market value of the shares on the date of exercise and the option price paid. The granting corporation is entitled to a business expense deduction equal to the income included in the employee's gross income on the exercise of a nonqualified stock option, provided the granting corporation deducts and withholds upon such amount in accordance with the provisions of I.R.C. § 3402.[3]

The taxpayers complied with the provisions of the Temporary Regulations and filed lawsuits, which were consolidated, seeking a refund.

The taxpayers' position at trial, adopted by the district court, was that Question and Answer 9 and 10 of Temporary Regulations section 1.422A–1 were invalid, unreasonable and inconsistent with ERTA section 251(c) for several reasons. The reasons we find convincing are that the challenged provisions exceeded the scope of authority contained in ERTA section 251(c)(1) by discriminating unfairly and contrary to Congressional intent against options that were ex-

---

that the option price (set at the time of grant) must not be less than the fair market value of the stock at the time the option is "granted." However, when there has been a modification to an option and such modification falls under the auspices of § 425(h), the fair market value at the time of the modification (rather than back in time to the date of original grant of the option) will be the yardstick for determining ISO status. Under the facts of the instant suits, the option price set in 1976 was clearly "less than" the fair market value of the Tidewater stock when the Plan was modified in 1980. Consequently, treating the 1980 amendment as subject to the § 425(h) rules results in a loss of ISO status for the [taxpayers'] options.

*Hope v. United States,* 617 F.Supp. 439 (E.D.La. 1985).

**3.** The granting corporation is entitled to a deduction of the nonqualified stock option payments if taxpayers, by virtue of the challenged provisions of the Temporary Regulations, may not take advantage of retroactive ISO status and are taxed on their stock options at ordinary income rates. However, if taxpayers prevail in asserting ISO capital gains treatment, the deduction which a granting corporation has claimed will be proven erroneous, and the granting corporation's tax liability correspondingly increased. Hence, the IRS theoretically suffers no loss of revenue regardless of the outcome of this case, and its counsel admitted as much during oral argument.

ercised between January 1 and August 13, 1981, and by providing that an amendment to an option which allows exercise of such option by tendering previously acquired stock constitutes a modification under I.R.C. § 425(h).

## II. ANALYSIS

ERTA's provision for incentive stock options was not new to that statute. An ISO provision similar to § 422A had been under consideration by Congress for over a year prior to August, 1981. The ISO provision was incorporated originally in the Tax Reduction Bill of 1980 reported out of the Senate Finance Committee on September 15, 1980, but not enacted into law. S.Rep. No. 940, 96th Cong., 2nd Sess. (1980). Perhaps for this reason, the ERTA transition provision provides:

§ 251(c) EFFECTIVE DATES AND TRANSITIONAL RULES.—

(1) OPTIONS TO WHICH SECTION APPLIES.—

(A) IN GENERAL.—Except as provided in subparagraph (B), *the amendments made by this section shall apply with respect to options granted on or after January 1, 1976, and exercised on or after January 1, 1981,* or outstanding on such date.

(B) ELECTION AND DESIGNATION OF OPTIONS.—In the case of an option granted before January 1, 1981, the amendments made by this section shall apply only if the corporation granting such option elects ... to have the amendments made by this section apply to such option ... [if it satisfies the limits on aggregate fair market value of stock options for any employee].

(2) CHANGES IN TERMS OF OPTIONS.—In the case of an option granted on or after January 1, 1976, and outstanding on the date of the enactment of this Act, paragraph (1) of section 425(h) of the Internal Revenue Code of 1954 shall not apply to any change in the terms of such option ... made within 1 year after such date of

enactment to permit such option to qualify as a [sic] incentive stock option. [emphasis added]

The thrust of this provision was to make available ISO treatment retroactively to options granted on or after January 1, 1976, and exercised on or after January 1, 1981 or outstanding on such date, with limited conditional requirements. The IRS does not dispute, however, that the effect of Question and Answer 9 and 10 of Temporary Regulations, 26 C.F.R. § 14a.422A–1 is categorically to deny such treatment to any ISO exercised between January 1 and August 13, 1981. The IRS states candidly in its brief its opinion that allowing retroactive ERTA status to already-exercised options "is a metaphysical abstraction having no place in the realities of tax administration." Appellant's Brief at 18.

The issue before us is whether, in the name of promulgating "needful rules and regulations," pursuant to I.R.C. § 7805(a), the IRS acted consistently with ERTA § 251(c)(1) and reasonably interpreted its purpose in depriving the holders of already-exercised options of the opportunity to assert retroactive ISO status. *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967). Although this Court owes deference to the agency construction of a regulation, *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982), we also recognize that the agency regulation may not amend the statute, *Miller v. United States*, 294 U.S. 435, 440, 55 S.Ct. 440, 442, 79 L.Ed.2d 977 (1935). The regulation must "implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. at 307, 88 S.Ct. at 450. Further, the Court accords "the interpretation [pursuant to a general authority] less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision." *See, e.g., United States v. Vogel Fertilizer Company*, 455 U.S. at 24, 102 S.Ct. at 827 (quoting *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288,

2292, 68 L.Ed.2d 814 (1981) ). Tested by these standards of deference to agency rulemaking capability, we find Question and Answers 9 and 10 of Temporary Regulations § 14a.422A–1 wanting.

The plain language of ERTA § 251(c)(1) and (2) demonstrates that the subject Temporary Regulations thwart its intent. Subsection (c)(1)(A) creates specific conditions under which options granted between 1976 and 1981 *and exercised* on or after January 1, 1981, may be treated as ISO's. If Congress did not want to make available ERTA-created ISO status to options which were exercised between January 1 and August 13, 1981, it could have omitted the phrase "and exercised on or after January 1, 1981" in subsection (c)(1)(A). The IRS attempts to divert our attention from this critical language by focussing on subsection (c)(2), which permits amendments to be made to options outstanding at August 13, 1981, the date of ERTA's enactment, to conform them with all of the technical ISO requirements. Because options still outstanding at that date must be amended, the IRS argues, Congress intended that options already exercised between January 1 and August 13, 1981 must similarly conform fully to § 422A. Whatever Congress intended with regard to the need for homogeneity among all stock options that would henceforth qualify for ISO status, the statute does not support the IRS's position. Subsection (c)(2) by its terms does not apply to options exercised during January 1 through August 13, 1981, although such options fall squarely within subsection (c)(1)(A).[4]

Second, Congressional history accompanying the enactment of the ERTA ISO provisions generally acknowledges that ISO status was to be afforded retroactively. Senate Report No. 97–144 provides in pertinent part that, "the bill generally applies to options exercised or granted after December 31, 1980, or outstanding on such date." S.Rep. No. 144, 97th Cong., 1st Sess. 101, *reprinted in* 1981 U.S. Code Cong. & Ad. News 105, 204. The Conference Committee, which generally followed the Senate proposal for ISO provisions, stated that, "[t]he agreement [to enact ISO's] will apply to options granted after January 1, 1976, and exercised after December 31, 1980, or outstanding on such later date." H.R. Conf.Rep. No. 215, 97th Cong., 1st Sess. 195, *reprinted in* 1981 U.S. Code Cong. & Ad. News 285, 324.

Third, application of the section 425(h) modification rule to Tidewater's 1980 amendment, as required by Temporary Regulations Question and Answer 10, is particularly perverse where that amendment reflects a condition allowed in ISO's. The Tidewater amendment was inspired by Rev.Rul. 80–244, 1980–2 C.B. 234, which provided that an employee would not recognize gain or loss on an exchange of previously-acquired stock in full or partial payment of the option price of a nonqualified stock option to the extent that the number of shares received on exercise did not exceed the number of shares of previously-acquired stock surrendered. The ERTA ISO

---

**4.** [T]he fact that Congress created an exception to the modification rule for amendments to conform options and plans to the ISO requirements but did not create a similar exception for amendments to plans between 1976 and August 13, 1981, to add rights permissible under the ISO legislation, even though it must have been aware that a great many, if not most, plans had been so amended, arguably indicates that it believed that section 425(h) was not applicable to the latter amendments.... Rubenfeld & Blessing, *Taking Stock: Executive Stock Options After The Economic Recovery Tax Act Of 1981*, 36 Tax Law. 347, 377 n. 180 (1983). We find unconvincing the taxpayers' argument that § 425(h) could never apply to options

originally granted under I.R.C. § 83(a), when the purpose of ERTA § 251(c)(1) and (2) was to facilitate their amendment to conform with § 422A, to which § 425(h) might apply. However, we do not believe that the IRS in promulgating Temporary Regulations has correctly interpreted the scope of § 425(h) in applying it so as to prevent any option exercised from January 1 to August 13, 1981, from falling within ERTA § 251(c)(1)(A) and (B). In our view, § 425(h) should be interpreted so as to harmonize with ERTA § 251(c)(1) or was overcome by it, for a narrow and limited category of options "grandfathered" into ISO status.

provision expressly permits similar treatment of options. I.R.C. § 422A(c)(5)(A). It makes no sense for the IRS to have promulgated Temporary Regulations providing that a pre-election amendment of a non-qualified option to allow its exercise by tendering previously-acquired stock will disqualify such an option from ISO treatment, when Congress specifically authorized such a provision for an ISO.

We further agree with the district court's conclusion that Question and Answer 9 of the Temporary Regulations is unreasonable and inconsistent with ERTA section 251(c)(1)(A) and the legislative history by denying a feasible rescission alternative to options that were exercised between January 1 and August 13, 1981. The Temporary Regulations require that Tidewater rescind the 1980 amendment to the Tidewater plan not only before ISO status was elected for their options, but even before the ISO provisions were enacted by Congress and, of course, before they were exercised. The district court aptly termed this a Catch–22 predicament. Where Congress has specifically stated its intent to afford ISO status to options exercised during a period before ERTA was enacted in 1981, IRS regulations may not ignore that intent. *See McDonald v. Commissioner,* 764 F.2d 322, 337 (5th Cir.1985).

In conclusion, we find Question and Answers 9 and 10 of the Temporary Regulations to be unreasonable and inconsistent with the scope and purpose of ERTA section 251(c)(1)(A) and therefore overly restrictive by denying the benefits of ISO treatment to options exercised between January 1 and August 13, 1981. The judgment of the district court holding such provisions invalid is

AFFIRMED.